Tito Imer ALVARENGA–VILLALO-
BOS, Petitioner–Appellant,

v.

John ASHCROFT, Attorney General of
the United States; Charles H. De-
more, District Director, U.S. Immigra-
tion and Naturalization Service, Re-
spondents–Appellees.

No. 00–17525.

United States Court of Appeals,
Ninth Circuit.

Submitted* Nov. 5, 2001

Filed Nov. 26, 2001

---

* The panel unanimously finds this case suitable
for decision without oral argument.  Fed.  R.App. P. 34(a)(2).

**1170**

Frank P. Sprouls, Ricci & Sprouls, San Francisco, California, for the petitioner-appellant.

Robert Yeargin, Special Assistant United States Attorney, Office of Immigration Litigation, San Francisco, California, for the respondents-appellees.

Before: FERNANDEZ, RYMER, and WARDLAW, Circuit Judges.

RYMER, Circuit Judge:

Section 241(a)(5) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1231(a)(5) (2001), reinstates a prior order of removal without reopening or judicial review when an alien has reentered the United States illegally after having been removed. This appeal requires us to consider whether the prior order may be collaterally attacked, and if not, whether § 241(a)(5) is constitutional.

When Tito Alvarenga–Villalobos, a native and citizen of El Salvador who was deported in 1997, reentered without permission, the Immigration and Naturalization Service (INS) reinstated his previous order of deportation. He moved to reopen his immigration proceedings to pursue an application for waiver of deportation under INA § 212(c) in light of *Magana–Pizano v. INS*, 200 F.3d 603 (9th Cir.1999), but the motion was denied. Alvarenga then sought a writ of habeas corpus. In a published opinion, the district court held that § 241(a)(5) precludes review of Alvarenga's previous order of deportation, and that applying § 241(a)(5) does not violate due process because Alvarenga was not prevented from seeking judicial review of the previous order. *Alvarenga–Villalobos v. Reno*, 133 F.Supp.2d 1164 (N.D.Cal. 2000). The court also held that § 241(a)(5) precludes review of any order of deportation whether lawful or not but in any event, Alvarenga's order of deportation was not unlawful.

We agree that § 241(a)(5) bars reexamining the original deportation order. We

also agree that there is no constitutional infirmity in applying it in this case, because Alvarenga could have appealed the immigration judge's pre-*Magana-Pizano* decision but did not. In any event, as the district court concluded, the prior order was not unlawful because his deportation proceeding was not on direct review when *Magana–Pizano* was decided and, as *Magana–Pizano* announced a new rule, it does not apply retroactively on collateral review. We therefore affirm.

## I

Alvarenga was admitted to the United States as an immigrant in 1977. In 1983 he was convicted of assault by force likely to produce great bodily injury under Cal.Penal Code § 245(a), and in 1992 he was convicted of oral copulation under Cal.Penal Code § 288a(c). On June 17, 1993, he was charged by the INS with being deportable under former INA § 241(a)(2)(A)(ii) because he had been convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal conduct. In June 1994, Alvarenga applied for a waiver of deportation under former INA § 212(c). At a hearing before an Immigration Judge (IJ) on June 16, 1997, Alvarenga's application for § 212(c) relief was pretermitted on the grounds that § 440(d) of the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub.L. No. 104–132, 110 Stat. 1214 (1996), precluded § 212(c) relief for any person convicted of an aggravated felony. At the same hearing, the IJ ordered Alvarenga deported to El Salvador. Alvarenga waived his right to appeal the IJ's decision, and was deported to El Salvador on June 20, 1997.

Five months later, in November 1997, Alvarenga reentered the United States illegally. He was discovered by an INS agent on July 20, 1999, in San Francisco County jail. On July 25, 1999, Alvarenga was given notice of the Attorney General's intent to reinstate his prior deportation order, and that order was reinstated on January 18, 2000. Meanwhile, on December 27, 1999, the Ninth Circuit held in *Magana–Pizano* that AEDPA § 440(d), which eliminated INA § 212(c) relief for aggravated felons, should not be applied to persons who were in deportation proceedings when the provision was enacted on April 24, 1996. Alvarenga had been in deportation proceedings at that time.

The United States indicted Alvarenga on January 27, 2000, for illegal reentry in violation of 8 U.S.C. § 1326. On August 4, 2000, Alvarenga moved to dismiss the indictment, arguing that he had been denied due process when the IJ pretermitted his § 212(c) application based on an erroneous legal interpretation. The United States requested leave of court to dismiss the indictment and on August 24, 2000, the indictment was dismissed.

On August 28, 2000, Alvarenga moved to reopen his immigration proceedings on the grounds that *Magana–Pizano* rendered the IJ's decision not to allow Alvarenga to pursue § 212(c) relief unlawful and that Alvarenga was entitled to have his application for § 212(c) relief heard on the merits. The IJ denied the motion for lack of jurisdiction. Alvarenga did not appeal the IJ's decision to the Board of Immigration Appeals (BIA) but applied for and was granted a stay of deportation by the IJ, permitting Alvarenga to seek relief in the district court.

On November 16, 2000, Alvarenga filed an application for a writ of habeas corpus in the district court requesting that the court stay deportation and remand the matter to the IJ with instructions to conduct a § 212(c) discretionary relief hearing. The district court denied Alvarenga's petition on December 22, 2000, and he timely appealed.

## II

■ Alvarenga contends that the district court should have applied *Magana–Pizano* to this case, but absent certain exceptions not applicable here, new rules are not to be applied retroactively on collateral review. Alvarenga relies on *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 97, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993), where the Court held that when it "applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule." Alvarenga contends that despite what it says, *Harper* is not limited to direct review. He points to *United States v. Newman*, 203 F.3d 700, 702 (9th Cir.), *cert. denied*, 531 U.S. 866, 121 S.Ct. 160, 148 L.Ed.2d 108 (2000), in support. In *Newman*, the petitioner had been charged with unarmed bank robbery, was released on bail with a condition of participating in a residential drug treatment program, and subsequently pled guilty. He was sentenced, but service of the sentence was delayed to allow him to complete the program. Meanwhile, the Supreme Court held in *Reno v. Koray*, 515 U.S. 50, 52, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995), that a defendant's prison sentence could not be reduced by the duration of his confinement to a community treatment center as a condition of release on bail. The Bureau of Prisons declined to give Newman credit for time served, and he filed a writ of habeas corpus which the district court granted. We reversed, holding that *Koray* could be applied retroactively to the habeas petition. In so doing, we observed that "[b]ecause habeas petitions are civil rather than criminal in nature, *Harper* appears to govern this case, although *Harper* dealt with 'cases still open on direct review,' and not specifically with habeas cases." *New-*

*man*, 203 F.3d at 702, *citing Harper*, 509 U.S. at 97, 113 S.Ct. 2510; *see also Tanner v. Sivley*, 76 F.3d 302 (9th Cir.1996) (applying *Koray* retroactively without discussion of retroactive application issue).

Notwithstanding retroactive application of *Koray* on collateral review, *Newman* does not require us to apply *Magana–Pizano* retroactively here. Both *Newman* and *Tanner* involved an issue (credit for time spent in detention) that could only be resolved by way of a petition for habeas corpus. Neither involved the retroactive application of a new rule for the first time on collateral review; rather, in each case the habeas court applied a new decision to validate the Bureau of Prison's original calculation. In this respect our court was effectively acting as if we were reviewing the issue on direct appeal. By contrast, Alvarenga's habeas petition seeks to apply to his prior order of deportation a new rule that did not take effect until two-and-a-half years after he had been deported.

■ Declining to apply *Magana–Pizano* retroactively comports with the "general rule of nonretroactivity for cases on collateral review" announced in *Teague v. Lane*, 489 U.S. 288, 307, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality). As the Court explained, "it has long been established that a final civil judgment entered under a given rule of law may withstand subsequent judicial change in that rule." *Id.* at 308, 109 S.Ct. 1060. *Teague* recognized only two exceptions to the rule of nonretroactivity for cases on collateral review: rules concerning "primary, private individual conduct," and procedures that are "implicit in the concept of ordered liberty." *Id.* at 307, 109 S.Ct. 1060. Neither exception applies here. Moreover, we have recently held that even in the criminal context, where constitutional protections are much stronger, "[a] change of law does not invalidate a conviction obtained

under an earlier law." *Kleve v. Hill*, 243 F.3d 1149, 1151 (9th Cir.), *cert. denied,* —— U.S. ——, 122 S.Ct. 341, —— L.Ed.2d —— (2001). We therefore agree with the district court that the new rule announced in *Magana–Pizano* cannot be applied to this case on collateral review such that Alvarenga's prior order of deportation is retroactively invalidated.

### III

Alvarenga contends that INA § 241(a)(5) does not apply to him because the statute applies only to lawful removal orders. However, we need not resolve this issue, because, as we have explained, Alvarenga's deportation order was perfectly lawful under the law at the time he was deported. "[I]t has long been established that a final civil judgment entered under a given rule of law may withstand subsequent judicial change in that rule." *Teague*, 489 U.S. at 308, 109 S.Ct. 1060.

Alvarenga also submits that he did not have meaningful judicial review available to him at the time of the IJ's original ruling because the law at the time was unfavorable to him. We disagree. He had the right to appeal his removal order to the BIA and, if unsuccessful there, to this court, yet he voluntarily waived that right. This was by no means "a complete deprivation of judicial review of the determination." *United States v. Mendoza–Lopez*, 481 U.S. 828, 840, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987).

### IV

Alvarenga contends that he should have the right to attack his prior deportation order collaterally in some forum, and that INA § 241(a)(5) violates procedural due process both on its face and as applied to this case by containing no mechanism for a hearing. We disagree because aliens removable under § 241(a)(5) have already received all of the process that is due under the Constitution.

Even if a statute does not so provide, "a collateral challenge to the use of a deportation proceeding as an element of a criminal offense must be permitted where the deportation proceeding effectively eliminates the right of the alien to obtain judicial review." *Mendoza–Lopez*, 481 U.S. at 839, 107 S.Ct. 2148. However, the requirements are less stringent for orders used in non-criminal deportations than for orders used in criminal prosecutions. As the Court stated in *Mendoza–Lopez:* "We note parenthetically that permitting collateral challenge to the validity of deportation orders in proceedings under § 1326 does not create an opportunity for aliens to delay deportation, since the collateral challenge we recognize today is available only in criminal proceedings instituted after reentry." *Id.* at 839 n. 17, 107 S.Ct. 2148. We have also emphasized that "because deportation proceedings are civil in nature, the full panoply of ... procedural and substantive safeguards which are provided in a criminal proceeding are not required." *United States v. Garza–Sanchez*, 217 F.3d 806, 811 (9th Cir.2000), *cert. denied*, 531 U.S. 1180, 121 S.Ct. 1159, 148 L.Ed.2d 1019 (2001) (quotation marks and citation omitted). Additionally, *Mendoza–Lopez* requires judicial review of a deportation in a subsequent proceeding only when the alien was deprived of the right to judicial review in the initial proceeding. *See Mendoza–Lopez*, 481 U.S. at 839, 107 S.Ct. 2148. This did not occur here. Alvarenga was not deprived of the right to judicial review in his initial deportation proceeding; he voluntarily waived his right to appeal.

Alvarenga points out that we recently expressed concern about the procedural due process implications of § 241(a)(5) and its implementing regulation, 8 C.F.R. § 241.8, in *Castro–Cortez v. INS*, 239 F.3d 1037 (9th Cir.2001). However, the issue there was whether summary expulsion

based on an INS agent's appraisal comported with due process. We did not decide that the reinstatement procedures codified in the regulation did violate due process and we decline to do so now. The regulation states:

An alien who illegally reenters the United States after having been removed, or having departed voluntarily, *while under an order of exclusion, deportation, or removal* shall be removed from the United States by reinstating the prior order. The alien has no right to a hearing before an immigration judge in such circumstances.

8 C.F.R. § 241.8(a) (emphasis added). Thus, another hearing is denied only to those aliens who have already been excluded, deported, or removed *after having been given one full and fair hearing, including the right to judicial review of that hearing.* To preclude a second bite at the apple after an illegal reentry does not offend due process. *See Duldulao v. INS,* 90 F.3d 396, 400 (9th Cir.1996) (holding that AEDPA § 440(a) does not offend due process).

## V

■ Alvarenga finally contends that 8 C.F.R. § 3.44(i) violates the equal protection clause because it arbitrarily and irrationally discriminates between two classes of aliens without a rational purpose. We disagree. Distinctions between different classes of aliens in the immigration context are subject to rational basis review and must be upheld if they are rationally related to a legitimate government purpose. *Ram v. INS,* 243 F.3d 510, 517 (9th Cir. 2001). Section 3.44 permits certain aliens who were in deportation proceedings before April 24, 1996 to file a motion to reopen to seek § 212(c) relief that they were denied on the basis of the 1997 decision of the Attorney General in *In re Soriano,* 21 I. & N. Dec. 516, 1996 WL 426888 (BIA 1996), which was overruled by

*Magana–Pizano.* Section 3.44(i), however, states that "[a]liens with a final order of deportation who have illegally returned to the United States" are not eligible for reopening under § 3.44. The government has a legitimate interest in discouraging aliens who have already been deported from illegally reentering, and this distinction is rationally related to that purpose.

AFFIRMED.