Eddy Bello NOLASCO, Petitioner,

v.

UNITED STATES OF AMERICA
Respondent.

No. 02 Civ. 3451(SAS).

United States District Court,
S.D. New York.

Nov. 3, 2004.

Eddy Bello Nolasco, McRae Federal Correctional Institution, McRae, Georgia, Petitioner pro se.

Patricia L. Buchanan, Assistant United States Attorney, New York, New York, for the Government.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

■ Pro se petitioner Eddy Bello Nolasco[1] seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging a June 20, 1997 Order[2] of the Immigration Judge ("IJ") deporting him from the United States to the Dominican Republic. *See* Record at 28. To challenge his order of deportation, Nolasco filed a petition pursuant to 28 U.S.C. § 2255 in the United States District Court for the District of New Jersey on February 22, 2002. That court transferred the case to the Southern District of New York because it found that Nolasco was then detained in this district. The District Court of New Jersey construed Nolasco's petition as a writ of habeas corpus under 28 U.S.C. § 2241.[3] Magistrate Judge Debra Freeman agreed with this construction. *See* Report and Recommendation ("R & R") at 1 n. 1. I also agree.

The sole issue raised in his habeas petition is the validity of this deportation order. Nolasco's petition asserts that his due process and equal protection rights were violated during his deportation proceedings because the IJ and the BIA erroneously considered him ineligible for discretionary relief under former section 212(c) of the Immigration and Nationality Act of 1952 ("INA").

---

**1.** Nolasco is a native and citizen of the Dominican Republic who entered the United States on March 27, 1976, as a lawful permanent resident. *See* Record at 70. "Record" refers to the certified copy of Nolasco's administrative deportation proceedings maintained by the Executive Office for Immigration Review, attached as Exhibit A to Respondent's Return dated October 15, 2002.

**2.** This Order became final when the Board of Immigration Appeals ("BIA") dismissed Nolasco's appeal on May 4, 1998.

**3.** Although Nolasco's petition was filed almost four years after his order of deportation be-

came final, it is not time-barred because there is no statute of limitations that applies to aliens filing federal habeas petitions under 28 U.S.C. § 2241. *See Lucatero v. United States Immigration and Naturalization Serv.*, No. 02-55190, 2003 WL 21480292, at *1 (9th Cir. June 20, 2003). Moreover, the ground Nolasco now asserts in his petition was not articulated by the Supreme Court until June 25, 2001, approximately eight months before he filed. *See Immigration and Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001).

The petition was referred to Magistrate Judge Freeman who issued an R & R on November 3, 2003, familiarity with which is assumed. Judge Freeman recommended that the petition be granted and the matter be remanded to the BIA for consideration of Nolasco's eligibility for relief from deportation under both former section 212(c) and section 245(a) of the INA, what in combination is known as *Gabryelsky* relief.[4]

On December 18, 2003, the Government objected to Judge Freeman's Report on the following grounds: (1) *St. Cyr* and *Drax*[5] do not apply because Nolasco's order of deportation was executed prior to the date of these decisions; (2) the United States of America is not a proper respondent; (3) this Court lacks subject matter jurisdiction because the reinstatement statute, INA § 241(a)(5),[6] bars reopening or review of the deportation order; (4) Nolasco's September 17, 1999 conviction for illegal reentry after deportation precludes him from challenging the validity of his June 20, 1997 deportation order under principles of res judicata; and (5) it would be futile to reopen Nolasco's deportation proceedings because he cannot avoid deportation for several reasons. *See* Respondent's Objections to the Magistrate Judge's November 4[sic], 2003 Report and Recommendation ("Objections").

Petitioner filed a response to the Government's Objections on May 28, 2004, *see* Petitioner's Response to the Objections ("Response"), to which the Government replied on June 25, 2004, *see* Government's Reply to Nolasco's Response to Objections to the Magistrate Judge's November 4[sic], 2003 Report and Recommendation ("Reply"). Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, this Court reviewed the petition and the R & R *de novo*, as well as the Objections, Response and Reply. For the following reasons, Judge Freeman's R & R is adopted in its entirety.

## I. FACTS

### A. Nolasco's Criminal History

On September 21, 1995, in the New Jersey Superior Court, Hudson County, Nolasco pled guilty to the possession of cocaine with intent to distribute within 1,000 feet of a school, and to the unlawful possession of a handgun. *See* Record at 56, 52. On January 26, 1996, Nolasco was sentenced to five years imprisonment on the drug charge and eighteen months on the handgun charge, to be served concurrently. *See id.* It appears that he was paroled on these charges on February 5, 1998, but was then taken into custody by the INS on a detainer. *See* New Jersey State Records, Department of Corrections, Ex. P to the Declaration of Assistant United States Attorney Patricia L. Buchanan

---

4. *See Matter of Gabryelsky,* 20 I. & N. Dec. 750 (BIA 1993) (holding that a lawful permanent resident alien who is deportable for both drug and weapons offenses can apply for adjustment of status to overcome his weapons conviction and may concurrently apply for section 212(c) relief to waive his drug conviction).

5. *Drax v. Reno,* 338 F.3d 98 (2d Cir.2003).

6. The full text reads as follows:

If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

8 U.S.C. § 1231(a)(5).

dated December 18, 2003 ("Buchanan Decl.").

## B. Nolasco's Deportation Proceedings

On January 2, 1997, the Immigration and Naturalization Service ("INS") served Nolasco with an Order to Show Cause charging him with being deportable on the following grounds: (1) his conviction for unlawful possession of a handgun; (2) his conviction for possession of a controlled substance; and (3) his conviction for an aggravated felony as defined in section 101(a)(43) of the INA. *See* Record at 70–78. These are deportable offenses pursuant to sections 241(a)(2)(C), 241(a)(2)(B)(i) and 241(a)(2)(A)(iii) of the INA. *See* 8 U.S.C. §§ 1251(a)(2)(C), 1251(a)(2)(B)(i), and 1251(a)(2)(A)(iii).

On March 6, 1997, immigration proceedings commenced before IJ Daniel Meisner in Newark, New Jersey. *See* Record at 33–37. The proceedings were adjourned several times and concluded on June 20, 1997. *See id.* at 41–51. Nolasco admitted the allegations and conceded all three charges contained in the Order to Show Cause. *See id.* at 44. The following colloquy occurred at the June 20th hearing:

[Nolasco]: I have my whole family here.

[IJ]: You know I understand that, but the law has changed from what it had been a year or so ago. And the law now indicates that if you have been convicted of a serious crime called an aggravated felony, like possession of drugs with intent to distribute near a school, and you've been sentenced to a year or more on that crime, then you can't present an application to stay

here based on your family, or equities, the hardship in leaving.

[Nolasco]: Well, I'd like to do that.

[IJ]: And the fact that on the drug charge you're sentenced to possibly serve up to five years, really bars you from any type of relief that I can think of. And, therefore, no matter how sympathetic I am to your situation, the fact that you have lived here a long time, and you have your whole family here, I just cannot exercise discretion in your favor. I can't grant the case, no matter how compelling it is, because the application just cannot be filed under the new law.

*Id.* at 46–47. At the end of the hearing, the IJ issued an oral decision finding Nolasco deportable based on all three charges contained in the Order to Show Cause. *See id.* at 29–30. The IJ further found that because Nolasco had been convicted of an aggravated felony, namely, possession of cocaine with intent to distribute within 1,000 feet of a school, he was ineligible for a waiver under former section 212(c) of the INA. *See id.* at 30. Nolasco was ordered deported to the Dominican Republic. *See id.* at 30–31.

Through counsel, Nolasco appealed the IJ's decision to the BIA. *See id.* at 24–27. On appeal, Nolasco's sole argument was that he should have been permitted to seek section 212(c) relief from deportation. *See id.* at 6–19. By decision dated May 4, 1998, the BIA affirmed the IJ's decision. *See id.* at 3. Relying on *Matter of Soriano,* 21 I. & N. Dec. 516, 533 (Op. Att'y Gen. Feb. 21, 1997),[7] the BIA found Nolasco statutorily barred from relief from deportation under section 212(c) by operation of

---

7. In *Matter of Soriano,* the Attorney General held that section 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214, 1277 (1996) ("AEDPA") operates retroactively to restrict the availability of section 212(c) relief in all cases, regardless of the date of the conviction, except where an application for such relief was filed prior to the enactment of the statute.

section 440(d) of the AEDPA.[8] Nolasco did not initially file a writ of habeas corpus or a petition for review challenging the order of deportation.

## C. Nolasco's Deportation and Subsequent Conviction for Illegal Reentry [9]

■ On July 2, 1998, Nolasco was deported from the United States to the Dominican Republic pursuant to a final order of deportation issued on May 4, 1998. *See* Warrant of Removal/Deportation and INS printout, Ex. C to Buchanan Decl. On July 31, 1999, Nolasco entered the United States at JFK International Airport by using an altered United States passport claiming to be a United States citizen named "Gilberto Valentin." *See* Passport, Ex. F to Buchanan Decl. The INS detected Nolasco's fraud and placed him under arrest. *See* INS Memo to File dated August 1, 1999, Ex. E to Buchanan Decl. On August 2, 1999, the INS released Nolasco

to the custody of the United States Marshal for criminal prosecution. *See* Notice of Detainer Against Alien Paroled in Custody for Prosecution, Ex. H to Buchanan Decl.

On August 2, 1999, a Complaint was filed against Nolasco in the United States District Court for the Eastern District of New York charging him with illegal reentry. *See* Complaint, Ex. J to Buchanan Decl. Nolasco pled guilty, pursuant to 8 U.S.C. § 1326(a), and (b), to illegal reentry after being deported subsequent to a conviction for an aggravated felony. On March 28, 2000, he was sentenced to seventy-seven months in prison. *See* Judgment of Conviction, Ex. K to Buchanan Decl. Nolasco did not appeal his conviction or sentence.[10]

## D. Reinstatement of the Prior Deportation Order

On March 25, 2002, one month after he filed the instant petition, the INS served

8. Section 440(d) of the AEDPA identified a broad set of offenses which preclude section 212(c) relief. Specifically, section 212(c) relief became unavailable where an individual was deported because he was convicted of an aggravated felony, a drug conviction, certain weapons and national security violations, or for multiple convictions involving crimes of moral turpitude.

9. This part of the Opinion recounts information that was not included in Respondent's Memorandum of Law in Opposition to the Petition for Writ of Habeas Corpus ("Opp.Mem.") or its Return dated October 15, 2002. Prior to filing its Response, the Government was unable to obtain Nolasco's administrative file maintained by the INS containing records of events subsequent to the BIA's dismissal of Nolasco's appeal, including: (1) the execution of Nolasco's order of deportation on July 2, 1998; (2) Nolasco's reentry into the United Stated by falsely claiming to be a United States citizen; (3) the reinstatement of Nolasco's 1998 order of deportation; (4) Nolasco's conviction for illegal re-entry; (5) Nolasco's incarceration pursuant

to his conviction; and (6) the availability of a visa. *See* Reply at 2–3. However, these facts will be considered because a district court may receive further evidence when it undertakes a *de novo* review of a magistrate judge's findings. *See* Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636(b)(1). *See also Hynes v. Squillace*, 143 F.3d 653 (2d Cir.1998) ("Both § 636(b)(1) and Fed.R.Civ.P. 72(b) explicitly permit the district court to receive additional evidence as part of its review.").

10. Nolasco subsequently filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255 on the ground that enhancement of his sentence based on his prior aggravated felony violated his due process and Sixth Amendment rights. The district court denied the motion. *See* Opinion and Order dated June 13, 2001, Ex. L to Buchanan Decl. The Second Circuit denied his motion for a certificate of appealability and dismissed his appeal because he failed to make a "substantial showing of the denial of a constitutional right." *See* Second Circuit Order dated August 30, 2001, Ex. M to Buchanan Decl.

Nolasco with notice that the Attorney General intended to reinstate the prior order of deportation pursuant to section 241(a)(5) of the INA, 8 U.S.C. § 1231(a)(5). *See* Notice of Intent/Decision to Reinstate Prior Order, Ex. I to Buchanan Decl. On March 27, 2002, the prior order of deportation was reinstated. *See id.*

## II. LEGAL STANDARD

The writ of habeas corpus has always been available to review the legality of Executive detention. Federal courts have been authorized to issue writs of habeas corpus since the enactment of the Judiciary Act of 1789, and § 2241 of the Judicial Code provides that federal judges may grant the writ of habeas corpus on the application of a prisoner held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. Before and after the enactment in 1875 of the first statute regulating immigration, 18 Stat. 477, that jurisdiction was regularly invoked on behalf of noncitizens, particularly in the immigration context.

*St. Cyr,* 533 U.S. at 305, 121 S.Ct. 2271 (citations and footnote omitted).

## III. DISCUSSION

### A. *St. Cyr* and *Drax* Are Applicable to Nolasco's Order of Deportation

The Government claims that Judge Freeman erred by applying *St. Cyr* [11] and *Drax* [12] because Nolasco's order of deportation was executed on July 2, 1998, before these cases were decided. The Government argues that under established principles of finality, *see Harper v. Virginia Dep't of Taxation,* 509 U.S. 86, 97, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993), the rule announced in *St. Cyr* does not apply retroactively to aliens already deported. In the Government's view, Nolasco cannot rely on *St. Cyr* because he did not have an appeal pending at the time it was decided.

 The Government errs in its view that *St. Cyr* and *Drax* announced new rules of law. *St. Cyr* interpreted a statute: as a result, its holding did not change the law. "Rather, *St. Cyr* 'finally decided what [IIRIRA] had *always* meant and explained why the [BIA and the] Courts of Appeals had misinterpreted the will of the enacting Congress.'" *United States v. Lopez–Ortiz,* 313 F.3d 225, 230 (5th Cir.2002) (quoting *Rivers v. Roadway Express, Inc.,* 511 U.S. 298, 313, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994) (emphasis in *Rivers;* alterations by *Lopez–Ortiz* )). *See also United States v. Garcia–Jurado,* 281

---

**11.** In *St. Cyr,* the Supreme Court held that section 440(d) of the AEDPA (which severely curtailed the availability of section 212(c) relief), and section 304 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, 110 Stat. 3009 (1996) ("IIRIRA") (which eliminated section 212(c) relief altogether), do not apply retroactively to aliens who were in deportation proceedings after the AEDPA and the IIRIRA became effective, but who pled guilty prior to the effective date of those statutes. *See St. Cyr,* 533 U.S. at 297, 326, 121 S.Ct. 2271. It is undisputed that petitioner pled guilty to the underlying criminal offense prior to the enactment of the AEDPA and the IIRI-

RA, and therefore was eligible for section 212(c) discretionary relief from deportation.

**12.** In *Drax,* the Second Circuit held that in light of *St. Cyr,* an IJ's error in not advising an alien that he was eligible for section 212(c) relief in conjunction with an adjustment of status under section 245(a) of the INA warranted the reopening of deportation proceedings. *See* 338 F.3d at 111–12 (stating that "*Gabryelsky* relief operates under the legal fiction that the § 212(c) and § 245(a) procedures occur at exactly the same time, thereby eliminating the obstacle to relief otherwise posed by the other conviction.").

F.Supp.2d 498, 510 n. 11 (E.D.N.Y.2003). The same is true of *Drax*—it did not state a new rule of law. Accordingly, it was not error to apply either case to Nolasco's petition.

■ In sum, *St. Cyr* established Nolasco's eligibility for section 212(c) relief at the time of his deportation while *Drax* afforded a petitioner the opportunity to pursue *Gabryelsky* relief before an IJ. Here, both the IJ and the BIA erred in finding Nolasco ineligible for section 212(c) relief. The rule against retroactivity cannot bar application of either *St. Cyr* or *Drax*. The Government's objection on this ground is therefore dismissed.[13]

### B. The Government Has Waived Its Objection Concerning Personal Jurisdiction

The Government argues that the United States is not a proper respondent in this habeas proceeding.[14] According to the Government, the proper respondent in a habeas corpus proceeding is the official with direct control over the petitioner's detention. *See Henderson v. INS*, 157 F.3d 106, 122 (2d Cir.1998) ("In general, courts have treated the individual with day-to-day control over the petitioner as the custodian for habeas purposes"). *See also* 28 U.S.C. § 2243 ("The writ ... shall be directed to the person having custody of the person detained."). Because the United States of America is not a "person," the Government contends that it is not a proper respondent in a habeas petition. The Government is effectively arguing that this Court does not have personal jurisdiction over the named respondent.

"A court has personal jurisdiction in a habeas case 'so long as the custodian can be reached by service of process.'" *Henderson*, 157 F.3d at 122 (quoting *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 499, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973)). "Historically, the question of who is 'the custodian,' and therefore the appropriate respondent in a habeas suit, depends primarily on who has power over the petitioner...." *Henderson*, 157 F.3d at 122. "While ... the custodian for habeas purposes has gen-

---

13. There is an alternative ground for dismissal of this objection. The Government knew that petitioner was relying on *St. Cyr* but did not argue against its applicability when this petition was before the Magistrate Judge. A party may not raise an objection to an issue it never brought before the Magistrate Judge. *See Forman v. Artuz*, 211 F.Supp.2d 415, 419 n. 8 (S.D.N.Y.2000) ("The Court notes that, in his objections, Petitioner has raised some legal arguments and factual assertions that do not appear in his Petition or in his opposition to Respondent's motion to dismiss. Such arguments and assertions ... were not before the Magistrate Judge and are not, therefore, properly raised here.") (citing *Robinson v. Keane*, No. 92 Civ. 6090, 1999 WL 459811, at *4 (S.D.N.Y. June 29, 1999) ("These issues were not raised before the Magistrate Judge and therefore were not addressed by him; accordingly, they may not properly be deemed 'objections' to any finding or recommendation made in the Report and Recom-

mendation.")). Although the Government might not have anticipated Judge Freeman's suggestion of *Gabryelsky* relief, it cannot have a second bite at the *St. Cyr* apple.

14. In its opposition papers, the Government did not contest jurisdiction in the Southern District of New York "because Nolasco was detained within the Southern District of New York at the time this petition was filed and is under a final order of deportation, and his administrative proceedings had taken place within this District." Opp. Mem. at 1 n. 1. The Government subsequently learned that Nolasco was detained at the Allenwood Correctional Facility("Allenwood") in Pennsylvania at all relevant times and that his administrative deportation proceedings were held in Newark, New Jersey. This is particularly troubling given the ease with which federal inmates can be located via a nationwide locator service provided by the United States Bureau of Prisons.

erally been the party in direct control of the petitioners, it is also true that the concept of 'in custody' for habeas purposes has broadened in recent years." *Id.* at 124. Regarding the role of the Attorney General, the *Henderson* court stated:

> [A]dditional factors relating to the unique role that the Attorney General plays in immigration matters may be taken to suggest that she may be a proper respondent in alien habeas cases. There is also no question that the Attorney General has the power to produce the petitioners, remains the ultimate decisionmaker as to matters concerning the INS, *see* 8 U.S.C. § 1103(a)(1), and is commonly designated a respondent in these cases, even when personal jurisdiction over the immediate custodian clearly lies. In this respect, the extraordinary and pervasive role that the Attorney General plays in immigration matters is virtually unique. Thus, the Attorney General continues to be in complete charge of the proceedings leading up to the order directing the [ ] removal [of aliens] from the country and has complete discretion to decide whether or not removal shall be directed.

*Id.* at 125–26 (internal quotation marks and citation omitted, alterations in original).

■ Jurisdiction over a habeas petition lies concurrently: (1) in the court for the district in which the petitioner is confined at the time the petition is filed; and (2) in the court for the district in which the petition was convicted and sentenced. *See* R & R at 7 (citing *Braden,* 410 U.S. at 499 n. 15, 93 S.Ct. 1123). Furthermore, any defects in personal jurisdiction can be waived by the Government. *See Simon v. United States,* 359 F.3d 139, 143 n. 9 (2d Cir.2004) (citing *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 703, 102 S.Ct. 2099,

72 L.Ed.2d 492 (1982) (holding that, unlike subject matter jurisdiction, any defects in personal jurisdiction can be waived)). Here, the Government has waived its objection to any defect in personal jurisdiction in the Preliminary Statement to its Objections. *See* Objections n. 1 ("The Government, however, does not contest jurisdiction in the Southern District of New York....").

When Nolasco filed his petition on February 22, 2002, he was detained at Allenwood which is located in Pennsylvania, where he remained through May 14, 2002, at which time he was transferred to another facility. *See* Inmate Data, Ex. O to Buchanan Decl. Allenwood is located in the jurisdiction of the Philadelphia field office of the Bureau of Immigration and Customs Enforcement ("BICE"). Arguably, then, Nolasco's custodian is the Interim Field Office Director of the BICE Philadelphia Office, the person with authority in the jurisdiction where Nolasco was detained at the time he filed his petition. *See* Objections at 10–11.

However, earlier in its Objections, the Government took the following position:

> As will be discussed more fully below, the proper respondent is Edward McElroy, Interim Field Office Director, Bureau of Immigration and Customs Enforcement, Department of Homeland Security. *The Government, however, does not contest jurisdiction in the Southern District of New York* and respectfully requests that the Court substitute Edward McElroy for the "United States of America."

Objections at 1 n. 1 (emphasis added). This contradicts the Government's later argument that the proper respondent is "Theodore Nordmark, the Interim Field Office Director for the Philadelphia Office of the Bureau of Immigration and Customs

Enforcement, Department of Homeland Security." *Id.* at 9–10.

The case law regarding the proper respondent in immigration habeas petitions is unclear at best. *See Ali v. Ashcroft,* 346 F.3d 873, 887–88 (9th Cir.2003) ("[A]lthough the principle that the immediate custodian is the proper respondent to a habeas petition is clear, the application of this principle in *immigration* habeas petitions does not lead to a simple resolution of how to identify the proper respondent.") (emphasis added). There are several possible respondents: the Attorney General of the United States; the Secretary of the Department of Homeland Security ("DHS"); the warden of the federal correctional institution where the alien is incarcerated; and, as the Government urges, the Interim Field Office Director for the local BICE office in the jurisdiction where the alien was incarcerated at the time the petition was filed. The Supreme Court and the Second Circuit have both reserved judgment on whether the Attorney General may be named as a respondent in an immigration habeas petition. *See Rumsfeld v. Padilla,* —— U.S. ——, —— n. 8, 124 S.Ct. 2711, 2718 n. 8, 159 L.Ed.2d 513 (2004) ("In *Ahrens v. Clark,* 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898 (1948), we left open the question whether the Attorney General is a proper respondent to a habeas petition filed by an alien detained pending deportation.... Because the issue is not before us today, we again decline to resolve it."); *Henderson,* 157 F.3d at 130 ("We decline at this time to resolve the issue of whether the Attorney General is a proper respondent for habeas actions brought by aliens facing deportation.").

The Supreme Court noted that the lower courts have divided on this question, "with the majority applying the immediate custodian rule and holding that the Attorney General is not a proper respondent." *Rumsfeld,* 124 S.Ct. at 2718 n. 8 (citing *Robledo–Gonzales v. Ashcroft,* 342 F.3d 667 (7th Cir.2003); *Roman v. Ashcroft,* 340 F.3d 314 (6th Cir.2003); *Vasquez v. Reno,* 233 F.3d 688 (1st Cir.2000); and *Yi v. Maugans,* 24 F.3d 500 (3d Cir.1994)). In *Robledo–Gonzales,* the court held that the proper respondent was the "warden of the [federal correctional] facility in which Mr. Robledo–Gonzales was being held." 342 F.3d at 673. In finding that the Attorney General was not the proper respondent, however, the court noted that, "neither the 'INS' nor its successor agency, the Department of Homeland Security, has taken even the preliminary step of filing a notice of detainer with the criminal authorities." *Id.* at 674. In *Roman,* the court held that the "the INS District Director for the district where a detention facility is located 'has power over' alien habeas corpus petitioners." 340 F.3d at 320. However, the Sixth Circuit noted that "[i]n light of the degree of control which the Attorney General has over an alien's immediate custodian, we believe that it may be appropriate to recognize the Attorney General as a proper respondent to an alien's habeas corpus petition under certain circumstances." 340 F.3d at 324–25. In *Vasquez* and *Li,* the courts held that the proper respondent was the superintendent or warden of the prison or facility where the detainee was being held.[15] *See Vasquez,* 233 F.3d at 692; *Yi,* 24 F.3d at 507.

In *Ali,* the Government argued that the Attorney General and the Commissioner of

---

**15.** Because the Government does not argue that the warden of Allenwood should have been named as the respondent, I need not address the propriety of naming as the respondent the warden of the federal correctional institution where the alien is being held.

the INS were not proper respondents because they did not have "day-to-day control" over petitioners. The Ninth Circuit disagreed, holding that the Attorney General was a proper respondent given his "unique role as the ultimate decision-maker." 346 F.3d at 888. The reasoning in *Ali* is persuasive. *See id.* ("Because immigration detainees are often transferred between different institutions around the country, the local INS District Director is a 'local figurehead' who is not an appropriate respondent.").

 Given the advanced posture of this case, it makes no sense to transfer it to another district where the habeas proceedings would have to begin anew. The choice, here, is therefore between the Attorney General and the Secretary of DHS. The Secretary of DHS, rather than the Attorney General, is now charged with the administration and enforcement of all laws relating to the immigration and naturalization of aliens. *See* 8 U.S.C. § 1103(a)(1); *see also Patterson v. INS*, No. 03CV1363, 2004 WL 1114575, at *2 n. 2 (D.Conn. May 14, 2004) (noting that under the current regime, the Secretary of DHS serves a similar role to that of the Attorney General). However, it is the Attorney General who continues to detain and maintain custody of aliens. *See* 8 U.S.C. § 1226. Moreover, as noted earlier, the Government has waived its objection regarding personal jurisdiction. Because this Court has personal jurisdiction over the respondent, whether it be the Attorney General or the Secretary of DHS, the petition will not be dismissed for failure to name the proper respondent.[16] *See Walters v. Ashcroft*, 291 F.Supp.2d 237 (S.D.N.Y.2003) ("The Court is persuaded that the Attorney General is a custodian of all aliens seeking review of final orders of removal, given the need for a flexible, practical approach to determining the proper custodian for habeas petitions...."). Accordingly, the objection regarding the proper respondent is dismissed.

### B. The Reinstatement Statute Does Not Bar This Court From Reviewing Nolasco's Petition

 The Government argues that Nolasco is not entitled to collaterally at-

---

**16.** To the extent that the Government may be concerned that permitting a petitioner to name the Attorney General or the Secretary of the DHS as a respondent may encourage forum shopping, strict application of traditional principles of venue, which apply in habeas petitions according to *Braden*, 410 U.S. at 500, 93 S.Ct. 1123, should sufficiently constrain any such forum shopping. *See Henderson*, 157 F.3d at 127–28. "As the Supreme Court explained in *Braden*, factors to be considered in determining whether venue is proper in a habeas suit include: (1) 'where all of the material events took place'; (2) where 'the records and witnesses pertinent to petitioner's claim are likely to be found'; and (3) the convenience of the forum for both the respondent and the petitioner." *Id.* at 128 n. 25 (quoting *Braden*, 410 U.S. at 493–94, 93 S.Ct. 1123). Applying those factors, Judge Freeman correctly found that "it would have been proper for Nolasco to file his petition in the district court for the District of New Jersey because the record indicates that the immigration proceedings against him, as well as his underlying conviction and sentence, all took place in New Jersey." R & R at 8. If not for the mistaken assumption that he was then detained in New York, his petition would likely have remained in New Jersey. Although the *Braden* factors indicate that the Southern District of New York was never the proper venue for this case, the Government did not raise an objection based on improper venue and has therefore waived this argument. *See Hoffman v. Blaski*, 363 U.S. 335, 343, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960) (stating that the failure to object to improper venue constitutes a waiver of the defect); *see also* 28 U.S.C. § 1406(b) ("Nothing in this chapter shall impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and sufficient objection to the venue.").

tack the June 20, 1997 deportation order because the reinstatement statute provides that a "prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed...."[17] *See* INA § 241(a)(5). According to the Government, Congress has enacted a legislative rule of finality that precludes courts from testing the validity of a prior order once an alien has been deported from the country and illegally reenters.[18] *See* Objections at 12–13. In support of its position, the Government cites the following cases: *Padilla v. Ashcroft,* 334 F.3d 921, 924 (9th Cir.2003) (reinstatement statute bars review of the prior removal order either directly or collaterally *if* that order satisfied due process); *Briones–Sanchez v. Heinauer,* 319 F.3d 324, 327 (8th Cir.2003) ("[Petitioner's] choice to reenter the country illegally effectively precluded any further rights he may have had to seek review of his initial removal proceedings."); *Ojeda–Terrazas v. Ashcroft,* 290 F.3d 292, 295 (5th Cir.2002) ("A fair interpretation of § 242 grants this court the authority to review the lawfulness of the reinstatement order. However, § 241(a)(5) limits that review to the reinstatement order itself; this court cannot 'reopen or review' the merits of [petitioner's] 1984 deportation order."); *Alvarenga–Villalobos v. Ashcroft,* 271 F.3d 1169, 1173 (9th Cir.2001) ("We agree that § 241(a)(5) bars reexamining the original deportation order.").

The Ninth Circuit has retreated from the position it took in *Alvarenga–Villalobos.* In *Arreola–Arreola v. Ashcroft,* 383 F.3d 956 (9th Cir.2004), petitioner sought review of an immigration officer's decision to reinstate a prior order of removal on the ground, *inter alia,* that he was deprived of due process in his underlying removal proceeding. The court, citing *Alvarenga–Villalobos,* 271 F.3d at 1174, recognized that "the reinstatement proceeding comports with due process when the alien has received due process in his underlying removal proceeding." *Id.* Accordingly, "[t]he validity of the reinstatement order thus depends on the validity of the prior removal order." *Id.* at 959–60. The court held that habeas jurisdiction exists for the district court to review petitioner's collateral attack on his underlying removal order. *See id.* at 964. In so holding, the Ninth Circuit stated:

> Recognizing that aliens must have one full and fair hearing prior to being removed, *see Getachew v.* [*INS,* 25 F.3d 841, 845 (9th Cir.1994)], we previously have held that the reinstatement order, as implemented by the INS under 8 C.F.R. § 241.8, satisfies due process as long as the underlying deportation or removal proceeding itself satisfied due process. *See Alvarenga–Villalobos,* 271 F.3d at 1174; *United States v. Luna–Madellaga,* 315 F.3d 1224, 1226–27 (9th Cir.2003); *Padilla v. Ashcroft,* 334 F.3d

---

**17.** This issue was not raised before Judge Freeman because the Government did not have access to Nolasco's administrative INS file at the time she issued her R & R. Because subject matter jurisdiction cannot be waived, the Government's objection must be addressed.

**18.** The Government also argues that Nolasco is precluded from seeking any relief under the express terms of section 241(a)(5), which provides that an alien who has illegally reentered the United States "is not eligible and may not apply for any relief." *See* 8 U.S.C.

§ 1231(a)(5). This argument can be summarily dismissed. The Government fails to quote all of the relevant statutory language which states that "the alien is not eligible and may not apply for any relief *under this chapter.*" *Id.* (emphasis added). The term "this chapter" refers to Chapter 12 (entitled "Immigration and Nationality") of Title 8 of the United States Code (entitled "Aliens and Nationality"). Because habeas relief does not arise out of Chapter 12 of Title 8, this statutory provision does not preclude habeas review.

921, 924 (9th Cir.2003). Therefore, because the constitutionality of a reinstatement order depends on whether an alien was afforded all the process to which he or she was entitled in the prior removal proceeding, the INS cannot reinstate a prior order of removal that did not comport with due process. Thus, an alien must have some forum in which he or she is permitted to show that he or she was denied due process in the prior removal proceeding.

*Id.* at 962. The court concluded that "[a]n interpretation of § 241(a)(5) to preclude all judicial review would raise serious constitutional concerns because it would potentially deprive an alien of the full and fair hearing guaranteed to him by the Constitution." *Id.* at 963.

The Ninth Circuit relied, in part, on the Fourth Circuit's decision in *Smith v. Ashcroft*, 295 F.3d 425 (4th Cir.2002), where the petitioner challenged the government's motion to reinstate his deportation order by filing a habeas petition with the district court. In *Smith*, as here, the BIA concluded that the AEDPA's amendments to section 212(c) precluded petitioner from presenting his case for a discretionary waiver from deportation. *See id.* at 426. Finding that the district court had habeas jurisdiction over petitioner's claim, the court explained:

> Smith contends that his Fifth Amendment right to due process was violated by the 1998 deportation proceedings because he was not given court review of the BIA ruling that he was not entitled to discretionary relief. The Act [8 U.S.C. § 1231(a)(5) ] currently prohibits direct judicial review of this claim because it implicates the validity of a prior order of removal ... This section precludes direct, non-habeas judicial review of any irregularities associated with the 1998 deportation order. Thus, if we do

not find habeas jurisdiction, Smith, like the petitioner in *St. Cyr*, is left without an available forum for adjudication of this purely legal question. To construe the Act to preclude all review of this claim would raise constitutional concerns similar to those expressed by the *St. Cyr* Court.

*Id.* at 428–29. *See also Sifuentes–Barraza v. Garcia*, 252 F.Supp.2d 354 (W.D.Tex. 2003) (holding that the district court may properly exercise habeas jurisdiction to collaterally review the underlying order of deportation when the INS seeks to reinstate that order pursuant to section 241(a)(5)).

The Government also argues that compelling policy considerations underpinning the reinstatement statute preclude review of an executed order of deportation. Arguably, granting this petition would provide an incentive for deported aliens, such as Nolasco, to illegally reenter the United States after the Government has executed an order of deportation. The Government posits that Congress codified the principle of finality in immigration proceedings by enacting section 241(a)(5). If not for this section, according to the Government, aliens would have endless opportunities to revisit the legality of their prior deportation orders. *See* Objections at 13–14 (citing *Matter of Yih–Hsiung Wang*, 17 I. & N. Dec. 565, 567, 1980 WL 121938 (BIA 1980) (stating that an alien's deportation or removal imparts finality to deportation proceedings which serves to discourage aliens from reentering the country illegally)).

The Government's policy arguments are flawed for two reasons. *First,* it ignores the fact that aliens who are convicted of illegal reentry are generally sentenced to substantial terms of imprisonment. This

fact, in itself, should discourage aliens from illegal reentry. *Second,* it also ignores the fact that an alien can collaterally attack an underlying deportation order in his criminal case for illegal reentry proceedings if he satisfies three requirements. *See* 8 U.S.C. § 1326.[19] The Government's arguments, while initially appealing, do not justify divesting this Court of habeas jurisdiction over Nolasco's petition.

The reasoning in *Arreola–Arreola* and *Smith* are persuasive. Here, petitioner sought collateral review of his underlying deportation order *before* the INS decided to reinstate it. Petitioner is entitled to a judicial forum in which to challenge the constitutionality of his original deportation order.[20]

## D. Nolasco's Conviction for Illegal Reentry After Deportation Does Not Preclude Him from Challenging the Validity of His Deportation Order

■ The Government argues that Nolasco's conviction for illegal reentry after deportation precludes him from challenging the validity of his deportation order. The Government reasons that because the validity of Nolasco's deportation was a necessary element of his criminal conviction for illegal reentry, although the order itself was never challenged, he cannot attack his deportation order in a subsequent proceeding under principles of res judicata. In support of this argument, the Government cites *DiGrado v. Ashcroft,* 184 F.Supp.2d 227, 233 (N.D.N.Y.2002),[21] where the court applied res judicata in the context of immigration proceedings.[22]

---

**19.** In *United States v. Mendoza–Lopez,* 481 U.S. 828, 839 & n. 17, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987), the Supreme Court held that "a collateral challenge to the use of a deportation proceeding as an element of a criminal offense must be permitted where the deportation proceeding effectively eliminates the right of the alien to obtain judicial review," but declined "to enumerate which procedural errors are so fundamental that they may functionally deprive the alien of judicial review."

Congress codified the holding in *Mendoza–Lopez* by amending the illegal reentry statute as follows:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) of this section or subsection (b) of this section *unless* the alien demonstrates that—
>
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d) (emphasis added).

**20.** Given that the Government waived its objections to personal jurisdiction and venue,

and that significant judicial resources have now been expended in this district, the petition should be heard here.

**21.** In *DiGrado,* the criminal proceedings had not yet concluded when petitioner filed a habeas petition challenging his deportation order. *See* 184 F.Supp.2d at 232 ("He is currently in the custody of the United States Marshals Service, on bail, awaiting trial on [federal criminal charges]."). In considering respondent's res judicata argument, however, the *DiGrado* court relied heavily on *United States v. Hernandez–Rodriguez,* 170 F.Supp.2d 700 (N.D.Tex.2001). Such reliance, however, was inappropriate because in *Hernandez–Rodriguez,* the petitioner had moved to dismiss the indictment in the criminal case, arguing that his 1999 deportation was invalid because it was based on an improper retroactive application of IIRIRA and AEDPA in light of *St. Cyr. See* 184 F.Supp.2d at 234. Here, as in *DiGrado,* there was no challenge to the underlying deportation order *during the course of* the *criminal* proceedings.

**22.** In his petition, DiGrado claimed he was wrongfully deported because at the time of his deportation he was eligible for relief under section 212(c), which the IJ erroneously denied him. *See id.* at 229–30. The district court dismissed the petition, stating:

> In the present case, although Immigration Judge Meisner's decision ultimately

 " 'Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action.' " *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 502, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)). The touchstone of a res judicata determination is whether the merits of the contested issue of fact or law were heard in the first litigation. *See Medina v. INS*, 993 F.2d 499, 503 (5th Cir.1993).

There is no dispute that the IJ's and the BIA's erroneous conclusion that Nolasco was ineligible for former section 212(c) relief was never litigated in the course of the criminal proceedings against Nolasco for illegal reentry. Nolasco was sentenced on March 28, 2000. *St. Cyr* was not decided until June 25, 2001. Accordingly, even if Nolasco had sought to collaterally attack his deportation order under 8 U.S.C. § 1326(d),[23] the ground that he now asserts was not yet clearly articulated. Res judicata would apply if Nolasco had unsuccessfully challenged his deportation order under section 1326(d) and then sought to invalidate that order in a subsequent habeas petition brought under 28 U.S.C. § 2241. *See Natatanzi v. INS*, No. 3:02CV1452, 2002 WL 32086509, at *1 (D.Conn. Nov.18, 2002) (declining to review petitioner's habeas petition on grounds of res judicata where another district court already ruled on the BIA's decision affirming a deportation order). But that is not the case here. There never was a *judicial* determination of the validity of Nolasco's deportation order notwithstanding his criminal conviction for illegal reentry.

proved to be an incorrect application of the revisions to the immigration laws, this fact did not render his decision void or otherwise subject to relitigation. Since the issue of his deportability has already been fully and fairly litigated [during the course of his immigration proceedings], the doctrine of res judicata precludes DiGrado from relitigating this claim in the present habeas corpus action.

*Id.* at 234. This holding, however, appears to be erroneous as it effectively forecloses any judicial forum in which aliens could meaningfully raise constitutional challenges to their prior deportation orders. In any event, decisions from other district courts are not binding on this Court. *See Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 430 n. 10, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996) ("If there is a federal district court standard, it must come from the Court of Appeals, not from the over 40 district court judges in the Southern District of New York, each of whom sits alone and renders decisions not binding on the others."); *Russell v. Board of Plumbing Exam'rs of the County of Westchester*, 74 F.Supp.2d 349, 351 (S.D.N.Y.1999) ("[T]his Court is not required to follow the decisions of coordinate district judges.") (citing *United States v. Bir-*

*ney*, 686 F.2d 102, 107 (2d Cir.1982) ("Thus, judges of coordinate jurisdiction are not bound by each others rulings, but are free to disregard them if they so choose.")), *aff'd*, No. 99–9532, 2001 WL 15628 (2d Cir. Jan.5, 2001).

**23.** The Second Circuit recently found that the failure to inform an alien of his right to seek discretionary review can be fundamental procedural error for purposes of section 1326(d)(3). The court explained that

a failure to advise a potential deportee of a right to seek Section 212(c) relief can, if prejudicial, be fundamentally unfair within the meaning of Section 1326(d)(3). To be sure, relief under Section 212(c) is not constitutionally mandated and is discretionary. It does not follow, however, that where an alien is erroneously denied information regarding the right to seek such relief, and the erroneous denial of that information results in a deportation that likely would have been avoided if the alien was properly informed, such error is not fundamentally unfair within the meaning of Section 1326(d)(3).

*United States v. Copeland*, 376 F.3d 61, 71 (2d Cir.2004)

This Court's review of the instant petition is not barred by res judicata.

### E. It Would Not Necessarily Be Futile to Reopen Nolasco's Deportation Proceedings

 The Government finally argues that it would be futile to reopen Nolasco's deportation proceedings because he cannot avoid deportation for the following reasons: (1) his conviction for illegal reentry; (2) he has served at least five years in prison based on his aggravated felony convictions; (3) he made a false claim of United States citizenship when he sought admission on July 31, 1999; and (4) he is not prima facie eligible for an adjustment of status. While the first three reasons make Nolasco ineligible for section 212(c) relief, they are not relevant to the instant petition which only concerns Nolasco's *original* deportation order and its reinstatement. As Judge Freeman properly stated, "[t]he Court is not aware of the commencement of any new removal proceedings subsequent to Nolasco's re-entry and arrest in 2000, or of the issuance of any subsequent order of removal." R & R at 17. While petitioner will undoubtedly have to serve his entire sentence for illegal reentry, the immigration authorities may decide not to bring new removal proceedings if his original deportation order is found to have been issued in error, especially in light of the mitigating circumstances present here.[24] This Court cannot, and should not, speculate as to whether new removal charges will be lodged against Nolasco in the future.

 The Government opposes remand to the BIA based on the ground that Nolasco has not shown that he is eligible for adjustment of status. If the Court were to accept this argument, it would effectively usurp the authority of the BIA, the BICE, and/or the Department of Homeland Security. It is up to the United States immigration authorities, not this Court, to determine whether Nolasco qualified for relief from deportation. If this Court were to dismiss the instant petition, it would usurp the decision-making authorities of these entities.

## IV. CONCLUSION

For the reasons stated above, the Government's Objections are dismissed and Judge Freeman's Report and Recommendation is adopted in its entirety. Accordingly, the matter is remanded to the BIA, or a successor entity, for consideration of Nolasco's eligibility for relief from deportation under both former section 212(c) and section 245(a) of the INA. The Clerk of the Court is directed to close this case.

SO ORDERED.

---

**24.** Such circumstances include the length of time that Nolasco has resided in the United States; the fact that his entire family is here; and the fact that his conviction for illegal reentry may have been premised on an invalid deportation order.