**Sergio Alfonso ARREOLA–
ARREOLA, Petitioner,**

v.

**John ASHCROFT, Attorney
General, Respondent.**

No. 01–71596.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 9, 2003.

Filed Sept. 8, 2004.

958

Mark Van Der Hout and Stacy Tolchin, San Francisco, CA, for the petitioner.

Papu Sandhu, Office of Immigration Litigation, Washington, D.C., for the respondent.

Before PREGERSON, BEAM,* and PAEZ, Circuit Judges.

PAEZ, Circuit Judge.

██ Sergio Alfonso Arreola–Arreola ("Arreola") petitions for review of an immigration officer's decision to reinstate a prior order of removal.[1] He challenges the reinstatement order on two principal grounds. First, he contends that the predicate removal order cannot serve as the basis for the reinstatement order because in the prior removal proceeding, the Immigration Judge ("IJ") erroneously determined that he had been convicted of an aggravated felony. In ordering Arreola removed, the IJ ruled that Arreola's conviction for driving under the influence constituted an aggravated felony within the meaning of 8 U.S.C. § 1101(a)(43)(F). *See Matter of Magallanes–Garcia,* 22 I. & N. Dec. 1, 1998 WL 133301 (BIA 1998), *overruled by In re Ramos,* 23 I. & N. Dec. 336, 2002 WL 1001049 (BIA 2002). After he was removed from the country, however, we determined that a conviction for driving under the influence did not constitute an aggravated felony. *See Montiel–Barraza v. INS,* 275 F.3d 1178 (9th Cir.2002). Thus, Arreola argues that, in light of the changes in the law, the prior removal order is invalid and cannot serve as the basis for the reinstatement order. We reject this argument because Arreola's removal order was "lawful under the law at the time he was deported." *Alvarenga–Villalobos v. Ashcroft,* 271 F.3d 1169, 1173 (9th Cir.2001).

Second, Arreola argues that he was denied due process when the immigration officer reinstated the prior removal order because he did not have a full and fair hearing prior to the reinstatement of that

---

* Honorable C. Arlen Beam, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

1. Arreola also appealed from the BIA's denial of his motion to reopen. *See Arreola–Arreola v. Ashcroft,* No. 02–71614. Although the cases were initially consolidated for briefing and oral argument, we decide them separately.

order and because he was deprived of due process in his underlying removal proceeding.[2] Because we have previously recognized that the reinstatement proceeding comports with due process when the alien has received due process in his underlying removal proceeding, see *Alvarenga–Villalobos*, 271 F.3d at 1174, Arreola's challenge to the constitutionality of the reinstatement order necessarily depends on a showing that the underlying removal order is unconstitutional.

We have jurisdiction to review Arreola's challenge to the reinstatement order. *See* 28 U.S.C. § 1291; *Castro–Cortez v. INS*, 239 F.3d 1037, 1044 (9th Cir.2001). Assuming that Arreola's factual representations are true, he raises a serious due process challenge to the reinstatement process as it is applied to him. We conclude, however, that we lack jurisdiction under the Immigration and Nationality Act ("INA") § 242(a)(2)(C), 8 U.S.C. § 1231(a)(5), to review Arreola's collateral attack on his removal order on direct appeal, but that the district court would have jurisdiction to consider any legal challenges to that order in a habeas proceeding under 28 U.S.C. § 2241. We also determine that transfer of this case to the district court is in the interest of justice. Accordingly, we transfer this case to the district court for further proceedings.

## I.

Arreola was born in 1957 in Mexico and came to the United States when he was just under two years old.[3] He ultimately obtained lawful permanent resident status in the United States. Arreola's entire family lives here, including his three United States citizen children, his four siblings and both parents.

On July 15, 1996, Arreola was convicted in the California Superior Court for driving under the influence of alcohol with three prior convictions in violation of California Vehicle Code §§ 23152(b) and 23175. Following his release from prison, he was transferred to the custody of the INS.[4]

On the basis of his 1996 criminal conviction, the INS served Arreola with a Notice to Appear ("NTA"), charging him with removability pursuant to INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii) (1996), as an alien who had been convicted of an aggravated felony as defined in INA § 101(a)(43), 8 U.S.C. § 1101(a)(43). Arreola retained counsel to represent him in the removal proceeding.

On October 6, 1998, the IJ found Arreola removable as charged, denied his application for cancellation of removal on the ground that he was ineligible for such relief because he had been convicted of an aggravated felony, and ordered him re-

2. He contends, in particular, that he was denied due process in his prior removal proceeding when, as a result of the ineffective assistance of his counsel, he did not knowingly waive his right to appeal the IJ's decision to the Board of Immigration Appeals ("BIA") and to seek judicial review of the IJ's decision in this court.

3. We take these facts from the limited administrative record before the Immigration Officer and from the parties' representations in their briefs, which rely heavily on the administrative record from Arreola's related appeal, *Arreola–Arreola v. Ashcroft*, No. 02–71614.

We recite the factual background to provide context to Arreola's claim here. In so doing, however, we recognize that the INS has made no factual findings regarding Arreola's claims, other than the fact of his prior removal order, his identity and his reentry into the United States.

4. On March 1, 2003, the INS was reorganized as part of the Department of Homeland Security. 6 U.S.C. § 542. Because the events in this case took place before the reorganization, we refer to the INS.

moved to Mexico. Arreola contends that, as the result of the ineffective assistance of his counsel, he unknowingly waived his right to appeal the IJ's order to the BIA and to this court. The INS removed Arreola to Mexico on October 19, 1998, and he reentered the United States sometime soon thereafter. On September 29, 2000, the INS served Arreola with a "Notice of Intent/Decision to Reinstate Prior Order" ("Form I–181"), notifying him that the Attorney General intended to reinstate the prior order of removal against him.[5]

After serving the NTA on Arreola, the INS arrested him and reinstated the removal order against him that same day.[6] Arreola appeals the September 29, 2000 reinstatement of his 1998 removal order.

5. The Form I–181 issued to Arreola, is a standard notice issued to an alien faced with reinstatement of a prior removal order. The form had two check boxes and a line for Arreola to sign next to the following statement: "I do/do not wish to make a statement contesting this determination." Although in this case, Arreola indicated he would like to make a statement, no record of that statement exists for us to review. Form I–181, which is written in English only, did not inform Arreola that he had the right to hire an attorney; and the INS does not serve an alien's existing counsel with the form. The INS regulation governing the reinstatement process, codified at 8 C.F.R. § 241.8 (1999), does not require that the INS officials delay the reinstatement procedure or permit access to counsel if the alien asserts his right to consult with an attorney. The form does not provide any space for a written statement and no provision exists under § 241.8 for recording or reviewing any statement the alien makes. The alien has no right to offer evidence for the Immigration Officer's consideration. Although the INS regulation indicates that the Immigration Officer handling the reinstatement order should determine if the alien has any claims for asylum or withholding of removal, no mechanism exists for the Officer to record that he has done so or to explain his resolution of any such claims. The form does not inform the alien of his right to seek judicial review.

## II.

The character of the pre-IIRIRA reinstatement statute, IIRIRA's revisions to that statute and the INS implementing regulation are relevant to our appraisal of the substantive legal questions raised by Arreola's petition for review. We therefore preface our discussion of those questions with an overview of the law and applicable regulations.

In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. 104–208, 110 Stat. 3009 ("IIRIRA"). Section 305 of IIRIRA redesignated former INA § 242(f)[7] as INA § 241(a)(5) and amended it to read as follows:

6. On October 4, 2000, the INS obtained a warrant for Arreola's arrest and charged him in the United States District Court with illegal reentry under 8 U.S.C. § 1326. Upon the government's request, the District Court dismissed those charges without prejudice on September 19, 2001.

7. INA § 242(f), 8 U.S.C. § 1252 (repealed 1996). Former INA § 242(f) provided:

Should the Attorney General find that any alien has unlawfully reentered the United States after having previously departed or been deported pursuant to an order of deportation, whether before or after June 27, 1952, on any ground described in any of the paragraphs enumerated in subsection (e) of this section [covering deportation based on alien smuggling; criminal offenses; failure to register and falsification of documents; and national security grounds], the previous order of deportation shall be deemed to be reinstated from its original date and such alien shall be deported under such previous order at any time subsequent to such reentry. For the purposes of subsection (e) of this section the date on which the finding is made that such reinstatement is appropriate shall be deemed the date of the final order of deportation.

If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under the prior order at any time after the reentry.

8 U.S.C. § 1231(a)(5). Like former § 242(f), § 241(a)(5) permits the INS to reinstate a prior order of removal and remove an alien who has unlawfully reentered the country. While not literally an order of removal, the reinstatement order gives effect to the removal order: It reinstates the removal order. *See Castro–Cortez*, 239 F.3d at 1043; *see also Ojeda–Terrazas v. Ashcroft*, 290 F.3d 292, 294–95 (5th Cir.2002) (collecting cases). The validity of the reinstatement order thus depends on the validity of the prior removal order. *See Alvarenga–Villalobos*, 271 F.3d at 1170.

Although the 1996 amendments to the INA expanded the types of removal orders subject to reinstatement, Congress did not otherwise make significant changes to the reinstatement statute. The INS, however, significantly altered its interpretation of the reinstatement statute and revised its regulation implementing the reinstatement process, after Congress adopted § 241(a)(5) in 1996, to eliminate the alien's right to an administrative hearing before issuing a reinstatement order. *See* 8 C.F.R. § 241.8(a).

The regulation implementing the former reinstatement statute, 8 C.F.R. § 242.23, required the INS to provide those aliens subject to a reinstatement order with a hearing before an IJ. Former § 242.23 charged the IJ with determining: the identity of the alien, whether the alien was previously deported; and whether the alien illegally reentered the United States. 8 C.F.R. § 242.23(c). At this hearing, the alien had the opportunity to contest the charges and evidence against him or her, present evidence on his or her own behalf, and apply for relief from deportation. *See id.* The alien could appeal an adverse decision to the BIA and could ultimately petition for review of the BIA's decision in the federal courts of appeals. *See Castro–Cortez*, 239 F.3d at 1044. In short, reinstatement under former § 242(f) was not automatic; and proceedings to reinstate a deportation order were conducted in accordance with the rules generally applicable in deportation proceedings. *Gagliano v. INS*, 353 F.2d 922, 929 (2d Cir.1965). Thus, there was no question that the alien received a full and fair hearing before his removal order was reinstated.

The regulation governing the process under § 241(a)(5) still require that the government determine the alien's identity; the terms on which the alien left the country; and whether the alien illegally reentered the country. The revised regulation, however, eliminates the basic procedural safeguards of former § 242.23. *See Castro–Cortez*, 239 F.3d at 1048–50 (expressing "serious doubt" whether the INS's implementing regulation meets the minimum protections of the Due Process Clause). Under the new INS regulation, an alien charged with illegal reentry under § 241(a)(5) has "no right to a hearing before an immigration judge." 8 C.F.R. § 241.8(a) (1999). Rather, an immigration officer alone makes the relevant inquiries and decides whether to issue a reinstatement order. 8 C.F.R. § 241.8(a)(1)-(3).

■ In the Attorney General's opinion, these changes to the INS's implementing regulation do not violate a petitioner's right to due process because he has "already received all of the process that is

due." *Alvarenga–Villalobos,* 271 F.3d at 1173. We agree with the Attorney General that a reinstatement order implemented under § 241.8 is not facially unconstitutional. Where the INS reinstates a removal order issued after a hearing comporting with all the requirements of Due Process, the reinstatement order does not violate an alien's due process rights merely because the INS does not provide a hearing prior to reinstating the order. *See id.*

This case is distinguishable, however, because here, Arreola argues that he did not receive all the process he was due in his prior removal proceeding.[8] In this circumstance, Arreola explains, the INS should not be allowed to use the reinstatement process to remove him, because to do so would result in a serious violation of his due process rights.[9]

■■■ Arreola's argument has considerable force. Indeed,"[i]t is well-established that the Due Process Clause applies to protect immigrants in deportation proceedings," *Getachew v. INS,* 25 F.3d 841, 845 (9th Cir.1994) and furthermore, that Congress cannot remove an alien without first providing "proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei,* 345 U.S. 206, 212, 73 S.Ct. 625, 97 L.Ed. 956 (1953); *see Castro–Cortez,* 239 F.3d at 1049. In prac-

tical terms, we have interpreted this principle to mean that "[t]he Due Process Clause requires that aliens threatened with deportation are provided the right to a full and fair hearing." *Castro–Cortez,* 239 F.3d at 1049 (internal quotation marks omitted); *see also Getachew,* 25 F.3d at 845.

Until the INS revised the regulation implementing the reinstatement statute, there was little doubt that an alien received all the process that was due because the INS provided him or her with a hearing before an IJ prior to reinstating a removal order. Thus, even if defects in the prior removal proceeding tainted the removal order, the INS had an opportunity to correct those defects by providing a full and fair hearing before issuing a reinstatement order. After the INS revised the implementing regulation, however, the only opportunity for an alien to contest issuance of a reinstatement order is during the course of his interview with the immigration officer when the officer determines whether to reinstate the prior removal order. *See* 8 C.F.R. § 241.8(a)(1)-(3). Thus, as the Attorney General recognizes, the implementing regulation is predicated on the notion that the alien was afforded all the process to which he was entitled in the prior removal proceedings. If it were not, the INS would be using the reinstatement

8. The Attorney General argues that even if the underlying removal proceeding did not comport with due process, Arreola had the opportunity to seek judicial review of that order by appealing the IJ's decision to the BIA and then, to this court. We reject this argument because Arreola alleges a due process violation that, by its very nature, affected his right to seek judicial review of the IJ's decision.

9. To establish a due process violation, Arreola must ultimately show that he suffered prejudice. *See Ramirez–Alejandre v. Ashcroft,* 320 F.3d 858, 869 (9th Cir.2003) (en banc). To demonstrate prejudice, however, an alien need not show that he or she would necessari-

ly be entitled to relief. He or she must only demonstrate a "plausible" ground for relief. *United States v. Arrieta,* 224 F.3d 1076, 1079 (9th Cir.2000). Here, Arreola presents a plausible ground for relief because he alleges he was denied effective assistance of counsel that ultimately foreclosed his opportunity to seek judicial review. *See Maravilla v. Ashcroft,* 381 F.3d 855, at 858, 2004 WL 1853455, at *3 (9th Cir. Aug.19, 2004) (per curiam) (holding that the proper prejudice standard for an ineffective assistance of counsel claim, is "only whether [the attorney's] deficient performance may have affected the proceedings.").

process to remove aliens in violation of the Fifth Amendment's Due Process Clause.

■ Recognizing that aliens must have one full and fair hearing prior to being removed, see *Getachew*, 25 F.3d at 845, we previously have held that the reinstatement order, as implemented by the INS under 8 C.F.R. § 241.8, satisfies due process as long as the underlying deportation or removal proceeding itself satisfied due process. See *Alvarenga–Villalobos*, 271 F.3d at 1174; *United States v. Luna–Madellaga*, 315 F.3d 1224, 1226–27 (9th Cir. 2003); *Padilla v. Ashcroft*, 334 F.3d 921, 924 (9th Cir.2003). Therefore, because the constitutionality of a reinstatement order depends on whether an alien was afforded all the process to which he or she was entitled in the prior removal proceeding, the INS cannot reinstate a prior order of removal that did not comport with due process. Thus, an alien must have some forum in which he or she is permitted to show that he or she was denied due process in the prior removal proceeding. See *Wong v. United States*, 373 F.3d 952, 960 (9th Cir.2004); see also *Arevalo v. Ashcroft*, 344 F.3d 1, 9 (1st Cir.2003) ("While we cannot revisit the validity of the original deportation order, see INA § 241(a)(5), we do have the authority to determine the appropriateness of its resurrection.").

Although the text of § 241(a)(5) states that "the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed," 8 U.S.C. § 1231(a)(5), Arreola contends that he must be allowed to collaterally attack his prior removal order in a direct appeal from his reinstatement order. We disagree.

### A.

■ We first address the issue of jurisdiction. It is clear that we have jurisdiction to review the reinstatement order.

*Castro–Cortez*, 239 F.3d at 1044. We lack jurisdiction, however, to review the underlying removal order in a direct appeal from the reinstatement order. See 8 U.S.C. § 1231(a)(5) ("[T]he removal order is reinstated from its original date and is not subject to being reopened or reviewed."); *Padilla*, 334 F.3d at 924; see also *Smith v. Ashcroft*, 295 F.3d 425, 428 (4th Cir.2002) (noting that § 241(a)(5) "precludes direct, non-habeas judicial review of any irregularities associated with the [underlying] deportation order"); *Avila–Macias v. Ashcroft*, 328 F.3d 108, 110 (3d Cir.2003). As we explained above, there must be some forum in which Arreola can meaningfully raise his constitutional challenge to the prior removal order, and to his removal pursuant to the reinstatement order. See *Webster v. Doe*, 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988) ("[S]erious constitutional question[s] . . . would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim.").

■ Congress's exercise of its control over our jurisdiction is subject to compliance with at least the minimum requirements of the Fifth Amendment. That is to say, while Congress has the undoubted power to give, withhold, and restrict the jurisdiction of courts other than the Supreme Court, it must not so exercise that power as to deprive any person of life, liberty, or property without due process of law or to take private property without just compensation. See *INS v. Chadha*, 462 U.S. 919, 940–41, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983) ("Congress has plenary authority in all cases in which it has substantive legislative jurisdiction, . . . so long as the exercise of that authority does not offend some other constitutional restriction."). An interpretation of § 241(a)(5) to preclude all judicial review would raise serious constitutional concerns because it

would potentially deprive an alien of the full and fair hearing guaranteed to him by the Constitution. Where fairly possible, we construe statutes to avoid such concerns. *See INS v. St. Cyr*, 533 U.S. 289, 308–09, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001); *Romero v. INS*, 39 F.3d 977, 981 (9th Cir.1994).

In resolving this conundrum, we are guided by the Supreme Court's decision in *St. Cyr*. In *St. Cyr*, the Court considered whether the 1996 amendments to the INA found in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and the IIRIRA stripped the courts of habeas jurisdiction under § 2241. 533 U.S. at 300–08, 121 S.Ct. 2271. Following a detailed review of the purpose and history of habeas jurisdiction, the court turned to the relevant provisions of the AEDPA and the IIRIRA and held that in the absence of a judicial forum in which to answer a question of law, and a lack of a "clear, unambiguous, and express statement of judicial consideration on habeas of such an important question of law in the statute," the AEDPA and the IIRIRA had not repealed habeas jurisdiction under § 2241. *Id.* at 314, 121 S.Ct. 2271.

■■■■ In *Smith*, the Fourth Circuit Court of Appeals, applying the reasoning in *St. Cyr*, determined that § 241(a)(5) did not preclude habeas jurisdiction where the petitioner's challenge to the reinstatement order implicated the validity of a prior removal order. *See* 295 F.3d at 428–29; *see also St. Cyr*, 533 U.S. at 314, 121 S.Ct. 2271 ("The absence of such a forum, coupled with the lack of a clear, unambiguous, and express statement of congressional intent to preclude judicial consideration on habeas ...."); *Avila–Macias*, 328 F.3d at 110 (holding that the petitioner could not collaterally attack the underlying deportation order on direct review from the reinstatement order but recognizing that he

"may be able to collaterally attack the underlying deportation order elsewhere"); *Briones–Sanchez v. Heinauer*, 319 F.3d 324, 328 (8th Cir.2003) (recognizing that the petitioner subject to a reinstatement order could challenge the fundamental fairness of his prior removal proceeding in a habeas petition). The *Smith* court further recognized that if habeas jurisdiction did not exist, the petitioner, like the petitioner in *St. Cyr*, would be left without an available forum for adjudication of his due process challenge to his underlying removal proceeding. 295 F.3d at 429. We agree with the sound reasoning adopted by the Fourth Circuit in *Smith* and hold that habeas jurisdiction exists for the district court to review Arreola's collateral attack on his removal order.

### B.

■■■■■ Under the circumstances, we treat Arreola's petition for review as a habeas petition. We cannot review Arreola's habeas petition, however, because we do not have jurisdiction to entertain an original petition for writ of habeas corpus. *See Carriger v. Lewis*, 971 F.2d 329, 332 (9th Cir.1992) (en banc). We may, however, transfer Arreola's petition to the district court under 28 U.S.C. § 1631. *See Cruz–Aguilera v. INS*, 245 F.3d 1070, 1074 (9th Cir.2001).

Transfer is appropriate under § 1631 if three conditions are met: (1) the transferring court lacks jurisdiction; (2) the transferee court could have exercised jurisdiction at the time the action was filed; and (3) the transfer is in the interest of justice. *See id.*. Arreola's case meets all three conditions. This court lacks jurisdiction to consider Arreola's challenge to the constitutional validity of his underlying removal order. The federal district court, the transferee court, has jurisdiction under 28 U.S.C. § 2241 to hear Arreola's habeas

petition.[10] *See id.* Finally, transfer of this case would serve the interests of justice because Arreola has raised a colorable constitutional claim,[11] *Gallo–Alvarez v. INS*, 266 F.3d 1123, 1129 (9th Cir.2001), that he was deprived of due process in his underlying removal proceeding and did not have judicial review of that proceeding. *See Maravilla*, 2004 WL 1853455, at *3. Furthermore, transfer of this case would serve the interests of justice by preventing unnecessary delay by requiring Arreola to re-file in the district court. *See Cruz–Aguilera*, 245 F.3d at 1074. " 'Due to the uncertain nature of jurisdiction in this case, the filing of the [ ] petition [in the wrong court] is understandable and transfer to the proper forum is particularly appropriate.' " *Cazarez–Gutierrez v. Ashcroft*, 382 F.3d 905, at 919, 2004 WL 1879240, at *12 (9th Cir. Aug.24, 2004) (quoting *Baeta v. Sonchik*, 273 F.3d 1261 (9th Cir.2001)).

Accordingly, we construe Arreola's petition for review as a petition for habeas corpus and order it transferred to the United States District Court for the Northern District of California, San Francisco division.[12]

**TRANSFERRED.**

---

10. We generally require, "as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro–Cortez*, 239 F.3d at 1047. However, where, as here, the statute forecloses "available judicial and administrative remedies," a failure to exhaust does not bar the district court from considering the petitioner's habeas petition. *See Martinez-de Bojorquez v. Ashcroft*, 365 F.3d 800, 801 n. 2 (9th Cir.2004). Even if the statute did not foreclose all judicial remedies, we note that the exhaustion requirement is subject to waiver because it is not a "jurisdictional" requirement. *Castro–Cortez*, 239 F.3d at 1047 (citing *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir.1990)).

11. To be "colorable," "the alleged violation need not be substantial but the claim must have some possible validity." *Torres–Aguilar v. INS*, 246 F.3d 1267, 1271 (9th Cir.2001) (internal citations and quotation marks omitted).

12. Arreola may make any necessary amendments to perfect the form of the habeas petition in the district court upon transfer.