# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RANULFO MARTINEZ-MERINO,
     *Petitioner,*

v.

MICHAEL B. MUKASEY,* Attorney
General,
     *Respondent.*

No. 05-74776

Agency No.
A78-198-090

ORDER AND
OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
August 8, 2007—Anchorage, Alaska

Filed May 5, 2008

Before: J. Clifford Wallace, John T. Noonan, and
Richard A. Paez, Circuit Judges.

Opinion by Judge Noonan

---

*Michael B. Mukasey is substituted for his predecessor, Peter D. Keisler, as Attorney General of the United States, pursuant to Fed. R. App. P. 43(c)(2).

**COUNSEL**

Phillip J. Eide, Anchorage, Alaska, for the petitioner.

Edward J. Duffy, Washington, D.C., for the respondent.

**ORDER**

The opinion and concurrence filed October 10, 2007, are WITHDRAWN.

**OPINION**

NOONAN, Circuit Judge:

In this converted petition for review of the order reinstating his removal from the country, Ranulfo Martinez-Merino (Martinez) challenges the validity of his underlying removal proceedings. Holding that Martinez has not successfully alleged the deprivation of any constitutional or statutory right

to be free from the restraint imposed by the reinstatement order, we deny his petition.

## ALLEGATIONS AND PROCEEDINGS

In the absence of any evidentiary hearing in, or findings by, the district court, we summarize only the allegations of the petitioner and the procedural record.

Martinez is a native and citizen of Mexico and a member of an indigenous minority group known as Triqui. His primary language is Triqui. He has a limited knowledge of Spanish.

Martinez entered the United States without inspection in early 2002. He had left Mexico because his brother had been killed by a guerrilla group that the government could not control, and he was afraid that the group would kill him. He was arrested by the Immigration and Naturalization Service (the INS). Granted voluntary departure, he departed for Mexico, but returned to the United States in August 2002.

In December 2002, he was again apprehended by the INS. He was given a form in Spanish headed "Notificación De Derechos." The form advised him of his right to a hearing before an Immigration Judge; of his right to communicate with counsel; of the opportunity to obtain from the INS a list of *asociaciones juridícas* which would assist him gratuitously or at little cost; of his right to communicate with the Mexican consul; and of his right to use a telephone to call a lawyer or the consul.

A second form "*Solicitud De Resolucion*" gave him three options: (1) to ask for a hearing before an IJ so that he could remain in the United States; (2) to state that he would be in danger if returned to Mexico, a statement that the form said would lead to a hearing before an IJ; or (3) to admit that he was illegally in the United States and did not believe that he

would be in danger if returned to his country. Under the third option he also renounced his right to a hearing.

On December 9, 2002, Martinez signed the second form checking off the third option. On December 9, 2002, he also signed a form in English entitled "Stipulated Request for Removal Order And Waiver of Hearing." He waived his right to apply for relief from removal and designated Mexico as his country of choice for removal. This form also declared that he had signed it voluntarily, knowingly, and intelligently. Also signing the stipulation were an immigration officer and the district counsel for the INS. On December 11, 2002, an IJ ordered Martinez's removal, and he was removed on December 17, 2002.

In April 2003, Martinez again entered the United States. He was apprehended by the INS on December 5, 2003. On the same day, he signed a form identifying himself as subject to the deportation order of December 11, 2002 and acknowledging his illegal reentry on April 15, 2003. The form instructed him that he could contest this determination by a written or oral statement to an immigration judge. The form was translated into Spanish for him. He checked a box indicating that he did not wish to make a statement, and he signed the form. A "supervising special agent" then entered "Decision, Order, and Officer's Certification" determining that Martinez was subject to removal.

Three days later, Martinez filed a petition with the district court for a writ of habeas corpus. On February 20, 2004, the district court dismissed the petitioner's challenge to the removal order of 2002. The district court transferred to this court that part of the petition challenging the reinstatement made in 2003. The district court ruled that Martinez could be removed from the United States. He was removed in early 2004.

On November 15, 2004, this court granted Martinez's unopposed motion to remand the case for proceedings in the

light of *Arreola-Arreola v. Ashcroft*, 383 F.3d 956 (9th Cir. 2004), *overruled by Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 496 (9th Cir. 2007) (en banc).

On March 18, 2005, Martinez filed an amended petition for a writ of habeas corpus. The district court scheduled a hearing for September 6-7, 2005. The district court directed that Martinez be paroled into the community to aid in the preparation of his case. Before the scheduled hearing could be held, however, the Real ID Act became law. Pursuant to § 106(a)(1)(B)(5), codified at 8 U.S.C. § 1252(a)(5), which provided that "the sole and exclusive means for judicial review of an order of removal" is the appropriate court of appeals, the district court again transferred the case to this court.

## ANALYSIS

Martinez argues that the effect of the transfer to this court is to deny him any opportunity to present his case. His case depends on evidence, and our court does not take evidence. The transfer, in effect, suspends the writ of habeas corpus because there is no way for his case to be heard.

While this appeal was pending, the en banc court overruled *Arreola-Arreola* and held that 8 U.S.C. § 1231(a)(5) precluded an alien petitioning for review of the reinstatement of an order of deportation from seeking to reopen the underlying removal order. *Morales-Izquierdo*, 486 F.3d at 496-97. Morales was seeking to get behind the reinstatement order to attack the removal order on the ground that he had not received notice of the removal hearing. The en banc court ruled that "the reinstatement statute specifically precludes Morales from seeking to reopen the previous removal order based on defective service or any other grounds. . . . Because none of the grounds Morales raises would have been a proper basis for relief during the reinstatement process, he suffered no preju-

dice by being denied access to an official who could adjudicate facts that might support these claims." *Id.* at 496.

The court further reasoned that § 1231(a)(5) "provided sufficient procedural safeguards to withstand a facial challenge for facial insufficiency," but acknowledged that individual petitioners might raise procedural defects in particular cases and considered the merits of Morales' claims. *Id.* at 495-96. The court concluded that even Morales' constitutional challenge to his underlying removal claim was not enough to invalidate the reinstatement order because "[r]einstatement of a prior removal order—regardless of the process afforded in the underlying order—does not offend due process because reinstatement of a prior order does not change the alien's rights or remedies." *Id.* at 497. Importantly, the reinstatement order "imposes no civil or criminal penalties, creates no new obstacles to attacking the validity of the removal order, and does not diminish petitioner's access to whatever path for lawful entry might otherwise be available to him under the immigration laws." *Id.* at 498.

Morales-Izquierdo did not consider or address the effect of 8 U.S.C. § 1252(a)(2)(D), which prevents other statutory provisions in the Immigration and Nationality Act from being construed to preclude review over "constitutional claims or questions of law." *Id.* All other circuits that have considered § 1252(a)(2)(D) in conjunction with § 1231(a)(5) have concluded that § 1252(a)(2)(D) vests circuit courts with the ability to review reinstated removal orders. *See Lorenzo v. Mukasey*, 508 F.3d 1278, 1282 (10th Cir. 2007); *Debeato v. Mukasey*, 505 F.3d 231, 235 (3d Cir. 2007); *Ramirez-Molina v. Ziglar*, 436 F.3d 508, 513-14 (5th Cir. 2006). Because we ultimately conclude that Martinez-Merino has not shown that he suffered a "gross miscarriage of justice," we do not decide today the precise effect of § 1252(a)(2)(D) on our review of reinstated removal orders.

[1] *Morales-Izquierdo* cuts out the feet of Martinez's argument. He was disabled by § 1231(a)(5) from attacking the

reinstatement order by attempting to show that he had received inadequate notice of his rights in the removal proceeding. Like Morales, Martinez suffered no prejudice in being subjected to the summary process provided an alien who returns illegally after removal.

Dissenting in *Morales-Izquierdo*, Judge Thomas pointed out that the decision raised "serious Suspension Clause concerns." *Id*. at 508. After all, the great writ "shall not be suspended unless when in Cases of Rebellion or Invasion the public safety may require it." U.S. Const. art. I, § 9, cl. 2. Obviously neither rebellion or invasion are relevant to this case. Is habeas unconstitutionally suspended? Where evidence is necessary to make a case for issuance of the writ, the practical effect of the statute is to forestall the case.

**[2]** The difficulty with this argument is that the statutory impact on the writ causes no prejudice to Martinez. If he could get an evidentiary hearing and if he could prove that he was not advised of his rights because he understood neither English nor Spanish, how would such proof advance his cause? *Morales-Izquierdo* holds that he cannot challenge the order of reinstatement by establishing a procedural defect of this kind in the underlying order of removal. Habeas review of the reinstatement order would provide no remedy for Martinez because he does not allege any constitutional infirmity in the reinstatement procedure he received. *See Morales-Izquierdo*, 486 F.3d at 497-98.

Martinez-Merino himself characterizes the provisions of the Real ID Act as a suspension of the great writ because Martinez-Merino cannot prove his case without submitting evidence, and, he asserts, "the Court of Appeals cannot conduct evidentiary hearings."

The accuracy of the latter assertion is doubtful: in appropriate circumstances we have taken evidence. But his assertion here is irrelevant. We need not decide whether the great writ

was suspended. In an abundance of caution, we assume, without deciding, that Martinez-Merino may still pursue his habeas claim in this court to which habeas claims have been transferred. We accept without evidence his claim that he was not advised of his procedural rights in the reinstatement hearing. He has not shown a "gross miscarriage of justice." *Ramirez-Juarez v. INS*, 633 F.2d 174, 175-76 (9th Cir. 1980). He is not entitled to relief.

Accordingly, the petition is DENIED.