# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-3735

_____

Brigido Lopez-Chavez

*Petitioner*

v.

Merrick B. Garland, Attorney General of the United States[1]

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: October 22, 2020
Filed: March 22, 2021

_____

Before BENTON, SHEPHERD, AND KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Brigido Lopez-Chavez, a native and citizen of Mexico, petitions this court for review of the denial of his application for cancellation of removal. Under the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.*, the Attorney

_____

[1]Merrick B. Garland is now Attorney General of the United States and is substituted as respondent pursuant to Federal Rule of Appellate Procedure 43(c).

General has the discretion to cancel removal proceedings in certain circumstances. Noncitizens who have "been convicted of any aggravated felony," however, are ineligible for cancellation of removal. Id. § 1229b(a).

In May 2017, an Immigration Judge (IJ) determined that Lopez-Chavez is ineligible for cancellation of removal because his 2006 federal conviction for illegal reentry in violation of 8 U.S.C. § 1326 qualifies as an aggravated felony. The Board of Immigration Appeals (BIA) affirmed the IJ's ruling and dismissed Lopez-Chavez's administrative appeal the following year.

The question now before the court is whether Lopez-Chavez's 2006 conviction qualifies as an aggravated felony under the INA, thus making Lopez-Chavez statutorily ineligible for cancellation of removal. We hold that it does not.

**I.**

In 1986, after spending a couple of years in California as a seasonal agricultural worker, Lopez-Chavez moved to St. Louis, Missouri and started working at a restaurant. He became a legal permanent resident in 1990.

Lopez-Chavez's immigration-related problems started in 2003 after he was convicted in Missouri state court of possessing marijuana with intent to deliver. See Mo. Rev. Stat. § 195.211 (2016), transferred to and modified by Mo. Rev. Stat. § 579.055. In June of that year, the Department of Homeland Security (DHS), relying explicitly on his Missouri conviction, issued a Notice to Appear (NTA) alleging that Lopez-Chavez was removable because he had "been convicted of an aggravated felony." See 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable."). Specifically, the NTA alleged that he had been convicted of an aggravated felony as defined in § 1101(a)(43)(B) of the INA, involving "illicit trafficking in a controlled substance."

Id. § 1101(a)(43)(B). As a result, on June 25, 2003, the immigration court ordered that Lopez-Chavez be removed to Mexico.

Lopez-Chavez was removed in August 2003, but he reentered the country shortly thereafter. In 2006, Lopez-Chavez pleaded guilty in Missouri federal district court to illegal reentry in violation of 8 U.S.C. § 1326 and was sentenced to 38 months' imprisonment. The 2003 removal order was reinstated, and Lopez-Chavez was once again removed to Mexico. He attempted reentry a second time in November 2009 but was detained either at the border or shortly after entering. In December 2009, he pleaded guilty to illegal reentry in violation of 8 U.S.C. § 1325 in Arizona federal district court and was sentenced to 180 days' imprisonment. The 2003 removal order was again reinstated and Lopez-Chavez was removed to Mexico for the third time.

Less than a year later, in September 2010, Lopez-Chavez was arrested at a California port of entry. He was subsequently indicted in federal court on one count of attempted reentry and one count of illegal entry. See 8 U.S.C. §§ 1325, 1326(a). Lopez-Chavez moved to dismiss the attempted reentry count pursuant to § 1326(d), which allows noncitizens to challenge the validity of an underlying removal order if (1) they have "exhausted any administrative remedies that may have been available to seek relief against the order," (2) "the deportation proceedings at which the order was issued improperly deprived [them] of the opportunity for judicial review," and (3) "the entry of the order was fundamentally unfair." See 8 U.S.C. § 1326(d). Lopez-Chavez argued that he received ineffective assistance of counsel during the 2003 removal proceedings and that the IJ erroneously found him removable by classifying his 2003 Missouri conviction as an aggravated felony. The federal district court in California denied the motion, and in 2011 Lopez-Chavez pleaded guilty to attempted reentry, reserving the right to appeal the denial of his motion to dismiss.

In July 2014,[2] the Ninth Circuit reversed. See United States v. Lopez-Chavez, 757 F.3d 1033, 1044 (9th Cir. 2014). The court determined that Lopez-Chavez received ineffective assistance of counsel throughout the 2003 removal proceedings, which prevented him from reasonably presenting his case, prejudiced him, and rendered the proceedings fundamentally unfair. Id. at 1042-43. Finding that Lopez-Chavez "satisfie[d] all three requirements necessary to sustain a collateral challenge to his underlying removal" under § 1326(d), the Ninth Circuit instructed the district court to dismiss the indictment. Id. at 1044.

On remand, the California federal district court vacated Lopez-Chavez's 2011 conviction. Meanwhile, Lopez-Chavez filed a motion to reopen the 2003 removal proceedings, which the immigration court granted, thus vacating the 2003 removal order and restoring Lopez-Chavez's status as a lawful permanent resident. See, e.g., Nken v. Holder, 556 U.S. 418, 429 n.1 (2009) (explaining that reopening removal proceedings "would necessarily extinguish the finality of the removal order"); Bonilla v. Lynch, 840 F.3d 575, 589 (9th Cir. 2016) (explaining that "if the BIA grants a motion to reopen, or a reviewing court holds that the BIA should have granted a motion to reopen, the final deportation order is vacated," meaning the noncitizen "is restored to his prior status"); Bronisz v. Ashcroft, 378 F.3d 632, 637 (7th Cir. 2004) ("[T]he grant of a motion to reopen vacates the previous order of deportation or removal and reinstates the previously terminated immigration proceedings.").

But Lopez-Chavez's troubles did not end there. In February 2016, DHS filed an amended charge of removability against him under 8 U.S.C. § 1227(a)(2)(B)(i) for having been convicted of a controlled substance offense. Lopez-Chavez

---

[2]Lopez-Chavez's appellate proceedings were stayed for some time pending the Supreme Court's anticipated decision in Moncrieffe v. Holder, 569 U.S. 184 (2013).

conceded the charge but filed an application for cancellation of removal as a lawful permanent resident under 8 U.S.C. § 1229b(a). The IJ, however, ruled that Lopez-Chavez is ineligible for cancellation of removal, reasoning that his 2006 illegal reentry conviction constituted an aggravated felony within the meaning of the INA. The BIA affirmed, and Lopez-Chavez timely petitioned this court for review. See id. § 1252(a)-(b).

## II.

Though we lack jurisdiction to review the BIA's ultimate, discretionary denial of cancellation of removal, 8 U.S.C. § 1252(a)(2)(B), we retain jurisdiction over any constitutional claims or questions of law raised in the petition for review. Id. § 1252(a)(2)(D). This includes the jurisdiction "to review the nondiscretionary determinations underlying a denial of an application for cancellation of removal, such as the predicate legal question [of] whether the BIA properly applied the law to the facts in determining an individual's eligibility to be considered for relief." Dominguez-Herrera v. Sessions, 850 F.3d 411, 414-15 (8th Cir. 2017) (cleaned up) (quoting Solis v. Holder, 647 F.3d 831, 832 (8th Cir. 2011)). "We review questions of law de novo and accord substantial deference to the BIA's interpretation of immigration law and agency regulations." Id. at 415 (quoting Bernal-Rendon v. Gonzales, 419 F.3d 877, 880 (8th Cir. 2005)).

## III.

Under 8 U.S.C. § 1229b(a), the Attorney General has the discretion to cancel removal proceedings for noncitizens who (1) have been "lawfully admitted for permanent residence for not less than 5 years," (2) have "resided in the United States continuously for 7 years after having been admitted in any status," and (3) have "not been convicted of any aggravated felony." 8 U.S.C. § 1229b(a). "The INA defines 'aggravated felony' to include a host of offenses." Moncrieffe v. Holder, 569 U.S.

184, 188 (2013); see 8 U.S.C. § 1101(a)(43). One of them is "an offense described in section 1325(a) or 1326 of this title committed by an alien who was previously deported on the basis of a conviction for an offense described in another subparagraph of this paragraph" (meaning another "aggravated felony" under § 1101(a)(43)). See 8 U.S.C. § 1101(a)(43)(O). Here, because Lopez-Chavez pleaded guilty in 2006 to "Illegal Reentry into the United States Subsequent to an Aggravated Felony Conviction" in violation of § 1326, the government contends his conviction "necessarily meets the requirements" of an aggravated felony under § 1101(a)(43)(O). We disagree.

## A.

To determine whether Lopez Chavez's 2006 conviction constitutes an aggravated felony under § 1101(a)(43)(O), we turn first to the language of the statute.[3] See United States v. Cacioppo, 460 F.3d 1012, 1016 (8th Cir. 2006) ("[W]e commence any statutory interpretation with the statute's plain language."). Recall that an aggravated felony under § 1101(a)(43)(O) means "an offense described in section 1325(a) or 1326 of this title committed by an alien who was previously deported on the basis of a conviction for an offense described in another subparagraph of this paragraph." 8 U.S.C. § 1101(a)(43)(O). Thus, a court applying § 1101(a)(43)(O) must determine: (1) whether the noncitizen has committed an

---

[3]Although we generally defer to the BIA's reasonable construction of the INA, "deference is not due unless a court, employing traditional tools of statutory construction, is left with an unresolved ambiguity." See Epic Sys. Corp. v. Lewis, 138 S. Ct. 1612, 1630 (2018) (cleaned up); see also Cuadra v. Gonzales, 417 F.3d 947, 950 (8th Cir. 2005) ("We do not defer . . . to legal interpretations that are contrary to unambiguous statutory language."). For the reasons outlined in this opinion, § 1101(a)(43)(O) is unambiguous. In addition, no deference can be due where, as here, the BIA did not engage in any meaningful interpretation of the statute. See Gonzales v. Oregon, 546 U.S. 243, 255-56 (2006) (requiring agency to actually exercise its authority to claim deference).

offense under § 1325(a) or § 1326; (2) whether the noncitizen committed that offense after having been "previously deported"; and (3) whether the previous deportation was on the basis of a conviction for an aggravated felony listed in § 1101(a)(43).

It is undisputed that Lopez-Chavez was convicted of an offense under § 1326 in 2006 and that he was "previously deported" in 2003. The government suggests, however, that we need not conduct a separate inquiry at step three because Lopez-Chavez already pleaded guilty to illegal reentry "subsequent to an aggravated felony conviction." The BIA agreed, concluding that Lopez-Chavez "remains statutorily barred [from cancellation of removal] due to his November 16, 2006 conviction for illegal reentry . . . subsequent to his removal for an aggravated felony conviction." But this approach is inconsistent with the plain language of the statute. Section 1101(a)(43)(O) applies specifically to people who were previously deported "on the basis of" a conviction for an aggravated felony; failing to conduct an independent inquiry into whether Lopez-Chavez's deportation was on that basis would render meaningless this statutory language. See DeBough v. Shulman, 799 F.3d 1210, 1214 (8th Cir. 2015) ("It is a settled rule of statutory construction that we must, if possible, construe a statute to give every word some operative effect." (cleaned up)); see also Duncan v. Walker, 533 U.S. 167, 174 (2001) (explaining that our "duty [is] to give effect, if possible, to every clause and word of a statute").

Important to remember is that an offense under § 1326 is not in and of itself an aggravated felony. See 8 U.S.C. § 1101(a)(43).[4] Thus, to decide whether Lopez-

---

[4]The term "aggravated felony" appears only in the "[c]riminal penalties" portion of the statute, 8 U.S.C. § 1326(b); thus, by definition, not every conviction under § 1326 is an aggravated felony. After all, the INA does not list an offense under § 1326 as an aggravated felony on its own; rather, to qualify as such, a § 1326 conviction must also have been committed by a noncitizen "previously deported on the basis of" a separate offense under § 1101(a)(43). Id. § 1101(a)(43)(O). Nor, for that matter, does a conviction under § 1326 itself require an underlying aggravated

Chavez's 2006 illegal reentry conviction qualifies as an aggravated felony under § 1101(a)(43)(O), we must ask whether he was "previously deported on the basis of" *another* offense in § 1101(a)(43). To answer that question, we must independently determine whether Lopez-Chavez's 2003 Missouri marijuana conviction is an aggravated felony under § 1101(a)(43).[5]

## B.

To assess "whether a state conviction renders [a noncitizen] removable under the immigration statute," Mellouli v. Lynch, 135 S. Ct. 1980, 1986 (2015), "we generally employ a 'categorical approach' to determine whether the state offense is comparable to an offense listed in the INA," Moncrieffe, 569 U.S. at 190. This

---

felony. Id. § 1326(a). Indeed, § 1326 applies not only to noncitizens who have been previously deported, like Lopez-Chavez, but also to those have been denied admission, excluded, or have themselves departed the United States "while an order of exclusion, deportation, or removal is outstanding." Id. § 1326(a)(1). This means that in a situation where, for instance, the § 1326 conviction was only for "illegal reentry," a court evaluating whether a noncitizen has an aggravated felony under § 1101(a)(43)(O) would *have* to inquire separately whether that person was also previously deported on the basis of another aggravated felony. The language of the statute does not allow courts to selectively conduct that inquiry in some circumstances and not others. See United States v. Santos, 553 U.S. 507, 522-23 (2008) (cautioning against "render[ing] every statute a chameleon" and against "establish[ing] . . . the dangerous principle that judges can give the same statutory text different meanings in different cases" (cleaned up)); Am. Tobacco Co. v. Patterson, 456 U.S. 63, 71 (1982) ("Statutes should be interpreted to avoid untenable distinctions and unreasonable results whenever possible.").

[5]The government urges us to adopt the reasoning of our sister circuit in United States v. Gamboa-Garcia, 620 F.3d 546 (5th Cir. 2010) and United States v. Piedra-Morales, 843 F.3d 623 (5th Cir. 2016). We decline to do so. For the reasons outlined in this opinion, we believe the rule adopted in Gamboa-Garcia and applied in Piedra-Morales to be inconsistent with the plain language of § 1101(a)(43)(O).

requires us to "look not to the facts of the particular prior case, but instead to whether the state statute defining the crime of conviction categorically fits within the generic federal definition of a corresponding aggravated felony." Moncrieffe, 560 U.S. at 190 (cleaned up). "Generic" means that "the offenses must be viewed in the abstract, to see whether the state statute shares the nature of the federal offense that serves as a point of comparison." Id. If the relevant state statute has the same elements as the generic federal crime, or if it defines the crime more narrowly, it categorically matches the federal offense. Descamps v. United States, 570 U.S. 254, 261 (2013). But a state crime that is broader than the generic federal crime is not a categorical match and so cannot serve as a predicate offense for removal. See id.

As the BIA explained, Lopez-Chavez's 2003 Missouri marijuana conviction—the basis for his removal—was considered an aggravated felony under 8 U.S.C. § 1101(a)(43)(B) at the time of removal. It is undisputed that this is no longer the case. In Moncrieffe v. Holder, the Supreme Court addressed this very subparagraph, holding that a state offense qualifies as an aggravated felony for "illicit trafficking in a controlled substance," 8 U.S.C. § 1101(a)(43)(B), only if it "proscribe[s] conduct that is an offense" under the Controlled Substances Act (CSA), and only if the CSA "prescribe[s] felony punishment for that conduct." Moncrieffe, 569 U.S. at 192. Like Lopez-Chavez, the petitioner in Moncrieffe was convicted of possession with intent to distribute marijuana (albeit in Georgia). Id. Under the CSA, the distribution of a small amount of marijuana for no remuneration is not a felony. Id. at 193-94 (citing 21 U.S.C. §§ 841, 844). Because the Georgia statute at issue in Moncrieffe did not "reveal whether either remuneration or more than a small amount of marijuana was involved[,] . . . Moncrieffe's conviction could correspond to either the CSA felony or the CSA misdemeanor," making it broader than the generic federal offense in § 1101(a)(43)(B). Id. at 194. Thus, it was not a categorical match. Id. Similarly, because the Missouri statute Lopez-Chavez was convicted under in 2003 criminalized "conduct that may fit under either the felony

-9-

or the misdemeanor provisions of the [CSA]," Lopez-Chavez, 757 F.3d at 1039, it is not a categorical match for the corresponding federal offense in § 1101(a)(43)(B).[6]

The government, however, argues that Moncrieffe does not control our analysis because "the focus is on whether the alien was removable for an aggravated felony *at the time of removal*."[7]  We are not persuaded.  As an initial matter, this

_____

[6]The Missouri statute made it "unlawful for any person to distribute, deliver, manufacture, produce or attempt to distribute, deliver, manufacture or produce a controlled substance or to possess with intent to distribute, deliver, manufacture, or produce a controlled substance."  Mo. Rev. Stat. § 195.211(1) (2016).  Because this language sets out "multiple, alternative versions of the crime," Descamps, 570 U.S. at 262, we apply the modified categorical approach to "determine which statutory phrase was the basis for the conviction," United States v. Vanoy, 957 F.3d 865, 867 (8th Cir. 2020).  See United States v. Maldonado, 864 F.3d 893, 898 (8th Cir. 2017) (explaining that modified categorical approach permits courts to look "to a limited class of documents," such as "the indictment, jury instructions, or plea agreement and colloquy[,] . . . to determine what crime, with what elements, a defendant was convicted of").  Here, Lopez-Chavez's indictment, plea, and judgment in Missouri state court establish that he was convicted of possession with intent to deliver more than 5 grams of marijuana.  Looking at the language of the Missouri statute, as the categorical approach requires, there is nothing to suggest that Lopez-Chavez's conviction required either remuneration or more than a small amount of marijuana. See Moncrieffe, 569 U.S. at 192-94.  Thus, Lopez-Chavez's 2003 state offense encompassed misdemeanor conduct under the CSA and it does not qualify as an aggravated felony under 8 U.S.C. § 1101(a)(43)(B).

[7]The government also cites a number of out-of-circuit decisions for this proposition.  See Avila-Sanchez v. Mukasey, 509 F.3d 1037 (9th Cir. 2007); Arreola-Arreola v. Ashcroft, 383 F.3d 956 (9th Cir. 2004); Alvarenga-Villalobos v. Ashcroft, 271 F.3d 1169 (9th Cir. 2001); Debeato v. Att'y Gen. of the United States, 505 F.3d 231 (3d Cir. 2007); Robledo-Gonzales v. Ashcroft, 342 F.3d 667 (7th Cir. 2003).  However, all of these decisions involved a collateral attack seeking to invalidate an underlying removal order under § 1326(d), which involves a high standard requiring exhaustion of administrative remedies, an improper deprivation of the opportunity for judicial review, and fundamental unfairness.  See 8 U.S.C.

proposition finds no support in the language of the statute. By instructing courts to determine whether the noncitizen was previously deported based on an offense in "another subparagraph of *this* paragraph," 8 U.S.C. § 1101(a)(43)(O) (emphasis added), the INA unambiguously anchors the inquiry in the text as it is written and understood *at the time* of that inquiry. Because the "statutory scheme is coherent and consistent," we see "no need . . . to inquire beyond" the plain language of § 1101(a)(43)(O).[8] United States v. Ron Pair Enters., Inc., 489 U.S. 235, 240-41 (1989).

Moreover, to the extent the government argues that this approach improperly applies Moncrieffe retroactively, we disagree. It is well-established that "[a] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction." Rivers v. Roadway Express, Inc., 511 U.S. 298, 312-13 (1994); see also DIRECTV, Inc. v.

---

§ 1326(d). By contrast, the removal order here has already been vacated, and the question before us now is simply whether Lopez-Chavez is currently eligible for cancellation of removal.

[8]An example helps explains why the government's proffered interpretation doesn't work. Suppose an applicant for cancellation of removal was convicted under § 1326 and had previously been deported on the basis of a state gun-trafficking offense that—at the time of his deportation—qualified as an aggravating felony under § 1101(a)(43)(C). Then, further suppose that just before the applicant requested the cancellation, Congress deleted § 1101(a)(43)(C) from the statute, thus removing the corresponding federal gun-trafficking offense from the INA entirely. In that situation, to apply the law as written and understood at the time of the previous deportation would contradict the requirement that the noncitizen have been "previously deported on the basis of a conviction for an offense described in another subparagraph of this paragraph," because the relevant subparagraph would no longer exist in "this paragraph." See 8 U.S.C. § 1101(a)(43)(O). We cannot "construe a statute in a manner that leads to absurd or futile results." Nixon v. Mo. Mun. League, 541 U.S. 125, 139 (2004) (cleaned up).

-11-

Imburgia, 577 U.S. 47, 56 (2015) ("[J]udicial construction of a statute ordinarily applies retroactively."); cf. United States v. Coleman, 961 F.3d 1024, 1027 (8th Cir. 2020) (applying Rehaif v. United States, 139 S. Ct. 2191 (2019), even though it was decided after the defendant's conviction, because "it clarified what § 922(g) 'has meant continuously since the date when it became law'" (cleaned up)). Moncrieffe did not change the law or create a new rule—it simply explained what § 1101(a)(43)(B) "has always meant." United States v. Rivera-Nevarez, 418 F.3d 1104, 1107 (10th Cir. 2005); see also, e.g., United States v. Aguilera-Rios, 769 F.3d 626, 631-33 (9th Cir. 2014) (rejecting government's argument that Moncrieffe cannot be applied retroactively to determine whether the noncitizen was removable in 2005); Sarmientos v. Holder, 742 F.3d 624, 627-31 (5th Cir. 2014) (applying Moncrieffe to find that the noncitizen's drug conviction was not an aggravated felony under § 1101(a)(43)(B) that made him ineligible for cancellation of removal, thus reversing pre-Moncrieffe BIA decision).

Lopez-Chavez was convicted under § 1326 and previously deported on the basis of his 2003 Missouri marijuana conviction. But the latter is not "an offense described in another subparagraph" of § 1101(a)(43). 8 U.S.C. § 1101(a)(43)(O). Accordingly, Lopez-Chavez's § 1326 conviction for illegal reentry is not an aggravated felony under § 1101(a)(43)(O).[9]

---

[9]In holding that Lopez-Chavez's 2006 illegal reentry conviction qualified as an aggravated felony under § 1101(a)(43)(O), the BIA reasoned that it had "not been set aside" and so the BIA could not "go behind the judicial record to determine [Lopez-Chavez's] guilt or innocence." The government similarly suggests that an outcome contrary to the BIA's would undermine the finality of the 2006 conviction for "Illegal Reentry into the United States Subsequent to an Aggravated Felony." But as discussed above, Lopez-Chavez's § 1326 conviction (and underlying guilty plea) is irrelevant to the requisite analysis under § 1101(a)(43)(O) of whether he was previously deported on the basis of an aggravated felony. Moreover, Lopez-Chavez is not asking for a readjudication of the § 1326 charge. Rather, he is asking us to determine his present eligibility for immigration relief under § 1229b, and to do so

-12-

## IV.

Because Lopez-Chavez's 2003 Missouri marijuana conviction is not a categorical match for the corresponding federal offense in 8 U.S.C. § 1101(a)(43)(B), the 2006 conviction for illegal reentry under § 1326 does not qualify as an aggravated felony under § 1101(a)(43)(O). Accordingly, Lopez-Chavez is not statutorily ineligible for cancellation of removal. <u>See</u> 8 U.S.C. § 1229b. We grant the petition for review, vacate the BIA's order, and remand for proceedings consistent with this opinion.

_____

using the proper interpretation of § 1101(a)(43)(B) and (O). Lopez-Chavez's criminal record will still reflect a 2006 conviction for illegal reentry under § 1326 after this decision issues.